CAMBRIDGE HOMES OF NORTH CAROLINA LIMITED PARTNERSHIP, Plaintiff v. HYUNDAI CONSTRUCTION, INC.; EX DECO, INC. a/k/a SEHWA/EXDECO, INC., SEWHA DECOVISION KOREA; SEDECO CO., LTD.; HANWHA CHEMICAL CORPORATION; AND HANWHA L&C CORPORATION, Defendants

No. COA08-242

(Filed 16 December 2008)

**1. Appeal and Error— appealability—interlocutory order— jurisdiction immediately appealable**

The denial of a motion to dismiss for lack of jurisdiction is immediately appealable.

**2. Jurisdiction— long-arm statute—products, materials, or things processed, serviced, or manufactured and used or consumed in North Carolina in ordinary course of trade**

The trial court did not err by determining that the long-arm statute conferred jurisdiction over defendants HCC and HLCC in an action seeking damages for repair and replacement of vinyl siding on homes constructed by plaintiff because: (1) defendants were subject to personal jurisdiction under N.C.G.S. § 1-75.4(4)(b); and (2) construing the long-arm statute liberally, the resins and the chemical compounds used to manufacture the vinyl siding constituted products, materials, or things processed,

408          IN THE COURT OF APPEALS

CAMBRIDGE HOMES OF N.C. LTD. P'SHIP v. HYUNDAI CONSTR., INC.

[194 N.C. App. 407 (2008)]

serviced, or manufactured by HCC and HLCC which were used or consumed in North Carolina in the ordinary course of trade.

**3. Jurisdiction— personal jurisdiction—lack of minimum contacts—due process—general jurisdiction**

The trial court erred by denying defendant HCC's motion to dismiss based on lack of minimum contacts with North Carolina (NC) to satisfy the due process prong of personal jurisdiction because: (1) the findings of fact did not support a conclusion that HCC purposefully availed itself of NC's jurisdiction; (2) conspicuously absent from the trial court's order was a finding that HCC initiated contact with Hyundai or any other NC company or otherwise solicited business activities in NC; (3) the mere fact that HCC was connected to the manufacture and distribution of vinyl siding was not sufficient to support a conclusion that HCC purposely availed itself of NC jurisdiction by injecting its product into the stream of commerce; (4) the evidence did not support a finding that HCC reasonably or should have reasonably anticipated its product would be sold in NC; (5) although plaintiff contends Hyundai's and Ex Deco's verified answer was competent evidence to support the finding that HCC was connected with the distribution and manufacture of vinyl siding in the stream of commerce, admissions in the answer of one defendant are not competent evidence against a codefendant; (6) there was no evidence that HCC exported its product for distribution in the United States; (7) HCC's only connection to NC arose from its relationship with HLCC; and (8) the trial court made no findings to support a conclusion that HCC had continuous and systematic contacts with NC for general jurisdiction.

**4. Jurisdiction— personal jurisdiction—lack of minimum contacts—due process**

The trial court erred by denying defendant HLCC's motion to dismiss based on lack of minimum contacts with North Carolina (NC) to satisfy the due process prong of personal jurisdiction because: (1) only after Hyundai requested that HLCC travel to NC to fix the siding did HLCC enter NC; (2) the findings that HLCC dealt directly with Hyundai, an NC company, were not supported by competent evidence and the other findings were insufficient to conclude HLCC purposefully availed itself of NC's jurisdiction; (3) HLCC's activities of shipping products to NC were after the complaint was filed, and thus these contacts were insufficient to determine HLCC reasonably anticipated being summoned into

CAMBRIDGE HOMES OF N.C. LTD. P'SHIP v. HYUNDAI CONSTR., INC.

[194 N.C. App. 407 (2008)]

NC courts in March 2006; and (4) although a subsidiary of HLCC operated a plant in Alabama that supplied bumpers, no evidence was presented to support the finding that those products were sold or distributed outside of Alabama.

Appeal by defendants from order entered 26 September 2007 by Judge J. Gentry Caudill in Mecklenburg County Superior Court. Heard in the Court of Appeals 10 September 2008.

*Nexsen Pruet, PLLC by David A. Senter and Gregory T. Higgins for plaintiff-appellee.*

*Nelson Mullins Riley & Scarborough, LLP by Tracy E. Tomlin and Joseph S. Dowdy for defendants-appellants Hanwha Chemical Corporation and Hanwha L&C Corporation.*

CALABRIA, Judge.

Hanwha Chemical Corporation ("HCC") and Hanwha L&C Corporation ("HLCC") (collectively referred to as "defendants") appeal an order denying their motions to dismiss plaintiff's complaint for lack of personal jurisdiction. We reverse and remand.

In 2003 and 2004, Cambridge Homes of North Carolina Limited Partnership ("plaintiff") contracted with Hyundai Construction, Inc. ("Hyundai"), a North Carolina company, to provide and install vinyl siding for homes constructed by plaintiff in Mecklenburg and surrounding counties. Hyundai installed vinyl siding manufactured by a Korean company, Sedeco Co., Ltd. ("Sedeco"). Sedeco used chemicals provided by HLCC and HCC in manufacturing the vinyl siding it sold to Hyundai. HCC and HLCC are also Korean companies.

Plaintiff received complaints about the vinyl siding and reported the problems to Hyundai. Hyundai asked HLCC to travel to North Carolina to assist in correcting problems with the siding. In February of 2004, S.M. Lee of HLCC traveled to Charlotte, North Carolina and met with representatives of Hyundai and Sedeco. On 30 March 2004, Seong-Min Lee of "Hanwha General Chemicals" sent a memorandum analyzing the components in the siding for HLCC. Plaintiff alleges it incurred damages from repair and replacement of the siding.

On 28 March 2006, plaintiff filed a complaint against Hyundai, Ex Deco, Inc. a/k/a Sehwa/ExDeco, Inc. ("Ex Deco"), Sewha Decovision Korea, Sedeco, and HCC. Plaintiff asserted claims of breach of implied warranty of merchantability, breach of warranty of fitness for a

CAMBRIDGE HOMES OF N.C. LTD. P'SHIP v. HYUNDAI CONSTR., INC.

[194 N.C. App. 407 (2008)]

particular purpose, and negligence against the Hanwha defendants.[1] Sedeco filed an answer to the complaint. Hyundai and Ex Deco filed a joint verified answer to the complaint. HCC moved to dismiss the complaint for lack of personal jurisdiction. Plaintiff filed a motion to amend the complaint to add HLCC as a party. The trial court granted the motion and plaintiff amended its complaint to add HLCC as a party on 31 August 2006. In the amended complaint, plaintiff alleged defendants provided the chemicals used by Sedeco to manufacture the allegedly defective vinyl siding. Motions to dismiss plaintiff's amended complaint for lack of personal jurisdiction were filed by HCC on 3 October 2006 and HLCC on 4 December 2006. On 26 September 2007, the trial court denied defendants' motions to dismiss. From this order, defendants appeal.

## I. Grounds for the Appeal

**[1]** "The denial of a motion to dismiss for lack of jurisdiction is immediately appealable." *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 614, 532 S.E.2d 215, 217 (2000) (citing N.C. Gen. Stat. § 1-277(b); *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 293 S.E.2d 182 (1982)).

## II. Standard of Review

"The standard of review of an order determining personal jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court." *Replacements, Ltd. v. MidweSterling*, 133 N.C. App. 139, 140-41, 515 S.E.2d 46, 48 (1999) (citation omitted).

Our review of the trial court's order also depends on the procedural posture of the challenge to personal jurisdiction:

> Typically, the parties will present personal jurisdiction issues in one of three procedural postures: (1) the defendant makes a motion to dismiss without submitting any opposing evidence; (2) the defendant supports its motion to dismiss with affidavits, but the plaintiff does not file any opposing evidence; or (3) both the defendant and the plaintiff submit affidavits addressing the personal jurisdiction issues.

*Banc of Am. Secs. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005).

---

1. Plaintiff also asserted six other claims against the other named defendants in the complaint.

CAMBRIDGE HOMES OF N.C. LTD. P'SHIP v. HYUNDAI CONSTR., INC.

[194 N.C. App. 407 (2008)]

Plaintiff argues the procedural posture in the instant case does not fit neatly into any of the categories, but is most similar to the second category. When HCC moved to dismiss the original complaint on 30 June 2006, it submitted an affidavit in support of the motion to dismiss. On 3 October 2006, HCC filed a motion to dismiss without any affidavits or supporting materials. On 4 December 2006, HLCC also filed a motion to dismiss without any supporting affidavits. On 18 May 2007, HLCC and HCC both filed affidavits in support of their motions to dismiss. The record also contains "Exhibits attached to Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss." A hearing on the motions to dismiss was held on 29 May 2007. The trial court relied upon affidavits, discovery, and other materials presented in ruling on the motion.

When, as here, the defendant presents evidence in support of his motion, the " 'allegations [in the complaint] can no longer be taken as true or controlling and plaintiff[ ] cannot rest on the allegations of the complaint.' " In that event, to determine whether there is sufficient evidence to establish personal jurisdiction, the court must consider: "(1) any allegations in the complaint that are not controverted by the defendant's affidavit and (2) all facts in the affidavit (which are uncontroverted because of the plaintiff's failure to offer evidence)."

*Dailey v. Popma*, 191 N.C. App. 64, 69, 662 S.E.2d 12, 16 (2008).

### III. Analysis

This Court applies a two-step analysis to determine whether a nonresident defendant is subject to personal jurisdiction in North Carolina. *Tom Togs, Inc. v. Ben Elias Industries Corp.*, 318 N.C. 361, 364, 348 S.E.2d 782, 785 (1986); *Skinner v. Preferred Credit*, 361 N.C. 114, 119, 638 S.E.2d 203, 208 (2006); *Cox v. Hozelock, Ltd.*, 105 N.C. App. 52, 53, 411 S.E.2d 640, 641-42 (1992). First, jurisdiction must be authorized by our "long-arm" statute, N.C. Gen. Stat. § 1-75.4. *Tom Togs, Inc.*, 318 N.C. at 364, 348 S.E.2d at 785; *Skinner*, 361 N.C. at 119, 638 S.E.2d at 208; *Cox*, 105 N.C. App. at 53, 411 S.E.2d at 642. "Second, if the long-arm statute permits consideration of the action, exercise of jurisdiction must not violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Skinner*, 361 N.C. at 119, 638 S.E.2d at 208.

There are two types of long-arm jurisdiction. *Tom Togs*, 318 N.C. at 366, 348 S.E.2d at 786. "Specific jurisdiction exists when

412　　　　IN THE COURT OF APPEALS

CAMBRIDGE HOMES OF N.C. LTD. P'SHIP v. HYUNDAI CONSTR., INC.

[194 N.C. App. 407 (2008)]

the cause of action arises from or is related to defendant's contacts with the forum." *Skinner*, 361 N.C. at 122, 638 S.E.2d at 210. The Court considers several factors in deciding whether specific jurisdiction exists: "(1) the extent to which the defendant purposely availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Woods Intern., Inc. v. McRoy*, 436 F. Supp. 2d 744, 748-49 (M.D.N.C. 2006) (internal quotation marks omitted). "General jurisdiction exists when the defendant's contacts with the state are not related to the cause of action but the defendant's activities in the forum are sufficiently continuous and systematic." *Skinner*, 361 N.C. at 122, 638 S.E.2d at 210 (internal quotation marks omitted). "The threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction." *Woods Intern., Inc.*, 436 F. Supp. 2d at 748 (quoting *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 715 (4th Cir. 2002) (internal brackets and quotation marks omitted)).

The long-arm statute "is a legislative attempt to allow the courts of this State to assert *in personam* jurisdiction to the full extent permitted by the Due Process Clause of the United States Constitution, and is accorded a liberal construction in favor of finding personal jurisdiction, subject only to due process limitations." *Kaplan School Supply v. Henry Wurst, Inc.*, 56 N.C. App. 567, 570, 289 S.E.2d 607, 609 (1982) (citations omitted). "When personal jurisdiction is alleged to exist pursuant to the long-arm statute, the question of statutory authority collapses into one inquiry-whether defendant has the minimum contacts necessary to meet the requirements of due process." *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 671, 541 S.E.2d 733, 736 (2001) (quotation and internal brackets omitted).

"In determining whether the exercise of personal jurisdiction comports with due process, the crucial inquiry is whether the defendant has certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.*

The factors to consider when determining whether defendant's activities are sufficient to establish minimum contacts are: (1) the quantity of the contacts; (2) the quality and nature of the contacts; (3) the source and connection of the cause of action to the

CAMBRIDGE HOMES OF N.C. LTD. P'SHIP v. HYUNDAI CONSTR., INC.

[194 N.C. App. 407 (2008)]

contacts; (4) the interests of the forum state, and (5) the convenience to the parties.

*Cooper v. Shealy*, 140 N.C. App. 729, 734, 537 S.E.2d 854, 857-58 (2000) (citation and internal quotation marks omitted). "Minimum contacts do not arise *ipso facto* from actions of a defendant having an effect in the forum state." *DeSoto Trail, Inc. v. Covington Diesel, Inc.*, 77 N.C. App. 637, 639, 335 S.E.2d 794, 796 (1985) (quotation omitted). "[W]hile application of the minimum contacts standard will vary with the quality and nature of defendant's activity, it is essential in each case that there be some act by which defendant purposely avails itself of the privilege of conducting activities within the forum state . . . ." *Buying Group, Inc. v. Coleman*, 296 N.C. 510, 515, 251 S.E.2d 610, 614 (1979) (internal quotation marks and ellipses omitted) (citation omitted).

Even if a defendant's contact with the forum state is direct and intentional, where the defendant's involvement with the contact is "passive," personal jurisdiction may be lacking. *Skinner*, 361 N.C. at 124, 638 S.E.2d at 211 (concluding no personal jurisdiction over a non-resident trust created for the purpose of being assigned income from mortgage notes, where the only contact with North Carolina is that some of the notes happen to be secured with North Carolina property). "Which party initiates the contact is taken to be a critical factor in assessing whether a nonresident defendant has made purposeful availment of the privilege of conducting activities within the forum State." *Banc of Am. Secs. LLC*, 169 N.C. App. at 698, 611 S.E.2d at 185 (quoting *CFA Medical, Inc. v. Burkhalter*, 95 N.C. App. 391, 395, 383 S.E.2d 214, 216 (1989)) (internal brackets and quotation marks omitted). "Nonresident defendants must engage in acts by which they purposely avail themselves of the privilege of conducting activities within the forum State to support a finding of minimum contacts." *Lulla v. Effective Minds, LLC*, 184 N.C. App. 274, 279, 646 S.E.2d 129, 133 (2007) (internal quotation marks and brackets omitted) (citation omitted). "The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or unilateral activity of another party or a third person." *Adams, Kleemeier, Hagan, Hannah & Fouts, PLLC v. Jacobs*, 158 N.C. App. 376, 381, 581 S.E.2d 798, 802, *rev'd on other grounds by*, 357 N.C. 651, 588 S.E.2d 465 (2003) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528, 542 (1985)) (internal ellipses, brackets and quotation marks omitted).

CAMBRIDGE HOMES OF N.C. LTD. P'SHIP v. HYUNDAI CONSTR., INC.

[194 N.C. App. 407 (2008)]

### A.  Personal Jurisdiction under the Long-Arm Statute

[2] Defendants argue that the trial court erred in determining that the long-arm statute conferred jurisdiction over HCC and HLCC. We disagree.

Plaintiff contends defendants are subject to jurisdiction under N.C. Gen. Stat. §§ 1-75.4(1)(d) & (4)(b) (2007). We agree that defendants are subject to personal jurisdiction under N.C. Gen. Stat. § 1-75.4(4)(b). The relevant portion of the statute provides:

> A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j), Rule 4(j1), or Rule 4(j3) of the Rules of Civil Procedure under any of the following circumstances:
>
> . . . .
>
> (4) Local Injury; Foreign Act.—In any action for wrongful death occurring within this State or in any action claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury . . . :
>
> . . . .
>
> b. Products, materials or things processed, serviced or manufactured by the defendant were used or consumed, within this State in the ordinary course of trade;

N.C. Gen. Stat. § 1-75.4(4)(b) (2007).

Defendants contend the trial court's findings of fact in support of personal jurisdiction are not supported by competent evidence. Defendants did not assign error to finding of fact number six. In its order, the trial court found

> The vinyl siding was manufactured by Sedeco and it incorporated chemical compounds created by Hanwha L&C and resins sold by Defendant Hanwha Chemical Corporation ("HCC") to Hanwha L&C.

Findings of fact that are not assigned as error are presumed to be supported by competent evidence and are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Construing the long-arm statute liberally, we conclude that the resins and the chemical compounds used to manufacture the vinyl siding constitute products, materials, or things processed, serviced

CAMBRIDGE HOMES OF N.C. LTD. P'SHIP v. HYUNDAI CONSTR., INC.

[194 N.C. App. 407 (2008)]

or manufactured by HCC and HLCC which were used or consumed in North Carolina in the ordinary course of trade. N.C. Gen. Stat. § 1-75.4(4)(b); *see also DeSoto Trail, Inc.*, 77 N.C. App. at 639, 335 S.E.2d at 796 (construing the long-arm statute liberally, installation of an engine by defendant in New Jersey was a product serviced and used in North Carolina within the ordinary course of trade). This assignment of error is overruled.

## B. Due Process Analysis

[3] Defendants next argue that HCC and HLCC lack certain minimum contacts with North Carolina to satisfy the due process prong of the personal jurisdiction analysis. We agree.

### 1. HCC's Contacts

The trial court made the following findings of fact with regard to HCC's contacts with North Carolina:

6. The vinyl siding was manufactured by Sedeco and it incorporated chemical compounds created by Hanwha L&C and resins sold by Defendant Hanwha Chemical Corporation ("HCC") to Hanwha L&C.

7. Hanwha L&C and HCC are related companies.

. . . .

10. Hanwha L&C and HCC were connected in the manufacture and distribution of vinyl siding products into the stream of commerce.

11. Products, materials or things processed, serviced or manufactured by Defendants Hanwha L&C and HCC were used or consumed within this State.

12. Hanwha L&C and HCC injected their products into the stream of commerce without any indication that they desired to limit the area of distribution of their product so as to exclude North Carolina.

. . . .

14. Plaintiff's causes of action arise directly from the intended use of Hanwha L&C's and HCC's products in North Carolina, by which Cambridge, a North Carolina resident, was allegedly injured.

. . . .

CAMBRIDGE HOMES OF N.C. LTD. P'SHIP v. HYUNDAI CONSTR., INC.

[194 N.C. App. 407 (2008)]

16. On March 29, 2004, HCC R&D Center Analysis Group, which is owned by HCC, produced a memorandum reporting test results of a sample of the allegedly defective vinyl siding. The memorandum was drafted by Mr. Seong-Min Lee, who is an employee of Hanwha L&C, and the test analysis results page was signed by Messrs, Bong-Keun Seo, Hee Bock Yoon, and Young-Choon-Kwon, who are employees of HCC R&D Center and who conducted testing on the vinyl siding product sample. The test/analysis results report was furnished by HCC R&D Center in both Korean and English.

These findings do not support a conclusion that HCC purposely availed itself of North Carolina's jurisdiction. Conspicuously absent from the trial court's order is a finding that HCC initiated contact with Hyundai or any other North Carolina company or otherwise solicited business activities in North Carolina. *Lulla v. Effective Minds, LLC, supra.*

Findings ten and twelve are conclusions of law and subject to *de novo* review. *In re J.S.L.*, 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006). The mere fact that HCC was "connected" to the manufacture and distribution of vinyl siding is not sufficient to support a conclusion that HCC purposely availed itself of North Carolina jurisdiction by injecting its products into the stream of commerce. Arguably, HCC was "connected" to the production of vinyl siding by the fact that HCC manufactured a resin which was sold to HLCC which was then incorporated into a component used to manufacture the vinyl siding. However, under these facts, in order to assert personal jurisdiction, HCC's connection must be more than fortuitous, random, or *ipso facto. Adams, Kleemeier, supra.; DeSoto Trail, Inc.*, 77 N.C. App. at 639, 335 S.E.2d at 796.

Plaintiff argues that by manufacturing a resin that was sold to HLCC, HCC injected its product into the stream of commerce without limiting its distribution, thereby availing itself of North Carolina jurisdiction. Plaintiff also argues that because finding number twelve was not specifically challenged in defendants' brief, this finding should be affirmed. We disagree.

Plaintiff cites *Liberty Finance Co. v. North Augusta Computer Store*, 100 N.C. App. 279, 395 S.E.2d 709 (1990), in support of this argument. In that case the defendant alleged the trial court relied on incompetent evidence to support its findings. *Id.* at 283, 395 S.E.2d at 711. This Court determined since defendant had "not directed this Court in its brief to any particular place in the record which would

IN THE COURT OF APPEALS                417

CAMBRIDGE HOMES OF N.C. LTD. P'SHIP v. HYUNDAI CONSTR., INC.

[194 N.C. App. 407 (2008)]

support its position" it did not meet its burden of showing error on the trial court's part. *Id.* The *Liberty* Court also determined defendant's affidavit constituted competent evidence to support the trial court's findings in favor of asserting personal jurisdiction. *Id.* at 283-85, 395 S.E.2d at 712.

Here, defendants properly assigned error to "finding" number twelve and argue that the trial court erred in determining personal jurisdiction over defendants was proper. Since we determined finding number twelve is really a conclusion of law, it is subject to *de novo* review.

Purposeful availment has been found where a corporation "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490, 502 (1980). A foreign manufacturer cannot shield itself from liability for injuries caused by a defective product in the forum state where it has no direct contacts by simply funneling its products through a completely separate and uncontrolled subsidiary. *Bush v. BASF Wyandotte Corp.*, 64 N.C. App. 41, 50, 306 S.E.2d 562, 568 (1983). Foreign manufacturers who export their products to the United States for distribution throughout the United States and neither intend nor anticipate the distribution to be limited to a particular state or states or attempts to limit its distribution, may be subject to personal jurisdiction in any U.S. state. *Id.* at 49, 306 S.E.2d at 567-68 (citing *McCombs v. Cerco Rentals*, 622 S.W.2d 822 (1981)). The foreseeability that is "critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S. Ct. at 567, 62 L. Ed. 2d at 501. The stream of commerce theory applies to products liability cases such as this one. *Considine v. West Point Dairy Products*, 111 N.C. App. 427, 430, 432 S.E.2d 412, 414 (1993).

After careful review, we conclude the evidence does not support a finding that HCC reasonably anticipated or should have reasonably anticipated its product would be sold in North Carolina. In HCC's affidavit, HCC denies that it provided chemicals to siding manufacturers, asserts that HCC did not solicit any business in North Carolina, nor did it contract with any North Carolina resident or a North Carolina distributor. HCC also asserted that it did not have any knowledge that

CAMBRIDGE HOMES OF N.C. LTD. P'SHIP v. HYUNDAI CONSTR., INC.

[194 N.C. App. 407 (2008)]

its resins would be used to manufacture the siding. Plaintiff did not present affidavits or other evidence to contradict HCC's assertions.

Plaintiff contends that Hyundai's and Ex Deco's Verified Answer is competent evidence to support the finding that HCC was connected with the distribution and manufacture of vinyl siding in the stream of commerce. We disagree. Hyundai and Ex Deco's Answer admits plaintiff's allegation that HCC and HLCC were in the business of providing chemicals to siding manufacturers, the chemicals were used in North Carolina and they knew or reasonably should have known that the chemicals were being used and would be used in products shipped and installed throughout the United States. Admissions in the answer of one defendant are not competent evidence against a codefendant. *Manufacturing Co. v. Construction Co.*, 259 N.C. 649, 652, 131 S.E.2d 487, 489 (1963); *see also Barclays American v. Haywood*, 65 N.C. App. 387, 389, 308 S.E.2d 921, 923 (1983) ("Facts admitted by one defendant are not binding on a co-defendant.").

Furthermore, there is no evidence that HCC exported its product for distribution in the United States. HCC admits it manufactured a chemical resin which was incorporated into another product manufactured by another Korean company. HCC's "products" were the resins sold to HLCC, a Korean company. HLCC's affidavit asserted it does not have any distributors in North Carolina. HLCC's chemical compound was sold to another Korean company, Sedeco. There is no evidence of any agreement between HCC and HLCC or HCC and Sedeco to distribute HCC's products in the United States. *Cf. Warzynski v. Empire Comfort Systems*, 102 N.C. App. 222, 229, 401 S.E.2d 801, 805 (1991) (concluding foreign manufacturer purposely injected its product into the stream of commerce without any indication it desired to limit the area of distribution by entering sales agreement with distributor). HCC's connection to Hyundai was through two separate Korean companies: HLCC and Sedeco. During oral arguments, counsel for plaintiff conceded that HCC's involvement in supplying the resins was another step removed from the manufacturing process when compared to HLCC's involvement. "Although contacts that are isolated or sporadic may support specific jurisdiction if they create a substantial connection with the forum, the contacts must be more than random, fortuitous or attenuated." *Havey v. Valentine*, 172 N.C. App. 812, 815, 616 S.E.2d 642, 647 (2005) (internal quotation marks omitted) (citation omitted). Under these facts, HCC's connection with North Carolina is too attenuated to make it reasonably foreseeable that it would be summoned into court here.

CAMBRIDGE HOMES OF N.C. LTD. P'SHIP v. HYUNDAI CONSTR., INC.

[194 N.C. App. 407 (2008)]

Although finding number sixteen indicates HCC was connected to a memorandum analyzing the chemical components in the siding, this memorandum was drafted in March of 2004, after problems were reported with the siding. Plaintiff argues this finding is relevant because it shows an intent by HCC to serve consumers in North Carolina. However, this finding shows that HCC conducted an analysis of its product after it had been sold and incorporated into another product. HCC's only connection to North Carolina arises from its relationship with HLCC. *See Buying Group, Inc. v. Coleman*, 296 N.C. at 517, 251 S.E.2d at 615 (defendant whose only contact in North Carolina consisted of his signature on a conditional promissory note to guarantee payment for a North Carolina creditor was an "isolated, fortuitous contact"); *Sola Basic Industries v. Electric Membership Corp.*, 70 N.C. App. 737, 321 S.E.2d 28 (1984) (no personal jurisdiction where defendant's only contact with North Carolina was when plaintiff removed a transformer purchased by defendant to North Carolina; defendant did not choose the repair location); *see also Skinner, supra.*

Plaintiff also argues there is general jurisdiction over HCC. We disagree. "The test for general jurisdiction is more stringent [than the test for specific jurisdiction] as there must be continuous and systematic contacts between the defendant and forum state." *Havey*, at 819, 616 S.E.2d at 649 (quotation marks and citations omitted). The trial court made no findings to support a conclusion that HCC had continuous and systematic contacts with North Carolina.

Since we determined HCC lacks the minimum contacts necessary to support a conclusion that HCC purposely availed itself of North Carolina's jurisdiction, we need not reach whether the exercise of jurisdiction comports with fair play and substantial justice. *See Buying Group, Inc.*, 296 N.C. at 515, 251 S.E.2d at 614 (it is essential that defendant purposeful avail itself of business activities in the forum state); *Tejal Vyas, LLC v. Carriage Park, Ltd. P'ship.*, 166 N.C. App. 34, 38, 600 S.E.2d 881, 885 (2004) (citations omitted) ("To generate minimum contacts, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum state and invoked the benefits and protections of the laws of North Carolina."); *see also CFA Medical, Inc.*, 95 N.C. App. at 394-95, 383 S.E.2d at 216. Accordingly, we reverse the trial court's denial of HCC's motion to dismiss.

CAMBRIDGE HOMES OF N.C. LTD. P'SHIP v. HYUNDAI CONSTR., INC.

[194 N.C. App. 407 (2008)]

## 2. HLCC's Contacts

[4] The trial court made the following findings of fact relating to HLCC's contacts:

3. Hyundai contacted Defendant Hanwha L&C Corporation ("Hanwha L&C") and Defendant Sedeco, which are both Korean companies, and requested that Hanwha L&C and Sedeco produce vinyl siding samples with specific colors, strengths and other features.

4. Thereafter, Hanwha L&C and Sedeco produced vinyl siding samples and provided them to Hyundai.

. . . .

6. The vinyl siding was manufactured by Sedeco and it incorporated chemical compounds created by Hanwha L&C and resins sold by Defendant Hanwha Chemical Corporation ("HCC") to Hanwha L&C.

7. Hanwha L&C and HCC are related companies.

8. Hyundai, Sedeco and Hanwha L&C discussed Plaintiff's vinyl siding requirements; produced, reviewed and approved vinyl siding samples; and knew that Hyundai was a United States company.

9. Hanwha L&C knew that its chemical compound would be used in the manufacture of vinyl siding.

. . . .

10. Hanwha L&C and HCC were connected in the manufacture and distribution of vinyl siding products into the stream of commerce.

11. Products, materials or things processed, serviced or manufactured by Defendants Hanwha L&C and HCC were used or consumed within this State.

12. Hanwha L&C and HCC injected their products into the stream of commerce without any indication that they desired to limit the area of distribution of their product so as to exclude North Carolina.

. . . .

CAMBRIDGE HOMES OF N.C. LTD. P'SHIP v. HYUNDAI CONSTR., INC.

[194 N.C. App. 407 (2008)]

14. Plaintiff's causes of action arise directly from the intended use of Hanwha L&C's and HCC's products in North Carolina, by which Cambridge, a North Carolina resident, was allegedly injured.

15. From February 12 through February 15, 2004, Mr. S.M. Lee, who is a representative of Hanwha L&C, traveled to Charlotte, North Carolina to meet with Hyundai's and Sedeco's representatives regarding the allegedly defective vinyl siding.

. . . .

18. Upon learning of certain alleged quality problems associated with the vinyl siding, Hyundai, Sedeco and Hanwha L&C met to discuss improving the quality of the vinyl siding. Thereafter, Sedeco continued to manufacture vinyl siding for Hyundai, which incorporated Hanwha L&C's chemical compounds.

Defendants argue findings of fact numbers three, four, eight, ten, eleven and fourteen are not supported by the record or are supported by inadmissible documents. Findings number three, four, and eight would support a conclusion that HLCC purposely availed itself of North Carolina jurisdiction because these findings indicate HLCC designed its product for Hyundai and was aware it was dealing with a North Carolina company. *See Banc of Am. Secs., LLC, supra* (sufficient contacts found where defendant entered into contract with North Carolina plaintiff and knew contract would be performed in North Carolina). We therefore examine whether these findings are supported by competent evidence.

Plaintiff's amended complaint alleged that both HCC and HLCC "had reason to know of the particular purpose for which the Sedeco Siding and Hanwha Chemicals were required—use in and for exterior siding on homes in the southeastern United States." HLCC's affidavit asserted HLCC had no knowledge of what would become of its chemical compound beyond the general knowledge that it would be used to manufacture siding in Korea. HLCC's affidavit also asserted that HLCC "does not design any of its products, including the product at issue, specifically for the North Carolina market." These assertions contradict plaintiff's allegations in its unverified complaint, therefore there must be other competent evidence to base a finding that HLCC was aware it was dealing with a North Carolina company. *See Bruggeman*, 138 N.C. App. at 615-16, 532 S.E.2d at 218; *cf. Liberty Finance, supra* (evidence in defendant's affidavit was competent to

CAMBRIDGE HOMES OF N.C. LTD. P'SHIP v. HYUNDAI CONSTR., INC.

[194 N.C. App. 407 (2008)]

support trial court's findings). HLCC admitted it knew its chemical compound would be used in the manufacture of vinyl siding by Sedeco in its responses to plaintiff's interrogatories. However, there is no competent evidence to support a finding that HLCC was aware that the siding would be sold outside of Korea or that HLCC provided samples of the chemical compound to Hyundai.

Plaintiff argues that Sedeco's answer constitutes competent evidence to support findings three, four and eight. However, Sedeco's answer is unverified and, as previously noted, answers of co-defendants are not admissible evidence against another defendant. *Manufacturing Co.*, *supra*; *Barclays American*, *supra*.; *see also Brown v. Refuel Am., Inc.*, 186 N.C. App. 631, 634, 652 S.E.2d 389, 392 (2007) ("Factual allegations in Defendants' unverified answer are not competent evidence[.]") and *Dixon v. Hill*, 174 N.C. App. 252, 620 S.E.2d 715 (2005) (denials in an unverified answer are not sufficient to defeat a summary judgment motion).

We find the facts of this case similar to *Charter Med., Ltd. v. Zigmed, Inc.*, 173 N.C. App. 213, 617 S.E.2d 352 (2005). In *Charter Medical*, this Court affirmed the trial court's dismissal of plaintiff's complaint for lack of personal jurisdiction over a foreign defendant because there was no evidence in the record that defendant attempted to benefit from the laws of North Carolina by entering the market here. In that case, plaintiff submitted a purchase order to defendant for a medical machine in New Jersey. Later, plaintiff asked defendant to ship the machine to its North Carolina facility. After delivery of the machine, defendant sent technicians to North Carolina for eight days to install the machine. This Court concluded since a substantial portion of the work was performed outside of North Carolina, these were not sufficient minimum contacts to subject defendant to North Carolina jurisdiction. *Id.*

Similarly here, only after Hyundai requested HLCC travel to North Carolina to fix the siding did HLCC enter North Carolina. Essential to asserting personal jurisdiction over a non-resident is a finding that a defendant's conduct made it foreseeable it could be summoned into court in North Carolina. Other cases have found minimum contacts where a foreign defendant contracted with a North Carolina resident or was otherwise aware that its activities would impact the North Carolina market. *See Tom Togs, Inc.*, 318 N.C. at 367, 348 S.E.2d at 787 (concluding defendant clothing distributor purposely availed itself of North Carolina jurisdiction where defendant

IN THE COURT OF APPEALS                423

CAMBRIDGE HOMES OF N.C. LTD. P'SHIP v. HYUNDAI CONSTR., INC.

[194 N.C. App. 407 (2008)]

initiated contact with plaintiff and was told when he purchased plaintiff's clothing that it would be specially cut and shipped from North Carolina); *Cox v. Hozelock, Ltd.*, 105 N.C. App. at 55-56, 411 S.E.2d at 643 (defendant injected its products into the stream of commerce by selling products to distributor who resold them to retail stores in North Carolina); *Banc of Am. Secs. LLC, supra.*

Here, the findings that HLCC dealt directly with Hyundai, a North Carolina company, are not supported by competent evidence. The other findings are insufficient to conclude HLCC purposely availed itself of North Carolina's jurisdiction.

We next examine whether HLCC's other business activities in North Carolina would satisfy the due process requirement. The trial court also found that:

20. Hanwha L&C has had the following additional contacts with the State of North Carolina.

A. In June, 2006, Hanwha L&C sold and shipped more than $20,000.00 worth of construction products to Charlotte, North Carolina.

B. From October 29, 2006 until November 3, 2006, several representatives of Hanwha L&C were present in North Carolina to conduct due diligence concerning the potential purchase of a company that maintained a factory in North Carolina.

C. In December, 2006, Hanwha L&C sold and delivered more than $25,000 worth of construction products to Waynesville, North Carolina.

21. Hanwha L&C's meeting in February 2004 with Sedeco and Hyundai, its sales and shipments to consumers in North Carolina in June and December 2006, and the due diligence it conducted in North Carolina relating to the purchase of a company that maintains a factory in North Carolina in October and November of 2006 indicate an intent to serve consumers in the North Carolina market specifically.

. . . .

23. Although not disclosed in discovery, Hanwha L&C owns a manufacturing plant, or has a division or subsidiary (e.g. Maxforma Plastics, LLC) that owns a manufacturing plant in Opelika, Alabama. The plant in Alabama is one factory in its oper-

ations network and it manufactures bumper beams and bumper cores for automobiles. Both Hanwha L&C America Corporation and Max Forma Plastics, LLC are registered as corporations in Alabama. Maxforma Plastics, LLC manufactures products for Hyundai Motor Manufacturing that are incorporated into Hyundai's automobiles. Hyundai's automobiles are sold in dealerships throughout North Carolina.

HLCC produced invoices indicating "Hanwha Corporation" shipped products to Waynesville, North Carolina in December 2006 and to Charlotte, North Carolina in June 2006. HLCC admits in its affidavit that it shipped products to North Carolina after the date of service of the complaint. From 29 October 2006 to 3 November 2006, HLCC conducted due diligence regarding the potential purchase of a company that owns a factory in North Carolina. Since these activities occurred after the complaint was filed and after the date of injury, we conclude these contacts are insufficient to determine HLCC reasonably anticipated being summoned into North Carolina courts in March 2006. In addition, although a subsidiary of HLCC operates a plant in Alabama that supplies bumpers to Hyundai Motor Manufacturing of Alabama, no evidence was presented to support the finding that those products are sold or distributed outside of Alabama. Accordingly, we reverse.

IV. Conclusion

The trial court's findings relating to HCC's contacts do not support a conclusion that HCC purposely availed itself of North Carolina's jurisdiction. The trial court's findings of fact in support of asserting jurisdiction over HLCC are not supported by competent evidence. For the foregoing reasons, we reverse and remand the trial court's denial of HCC's and HLCC's motions to dismiss for lack of personal jurisdiction.

Reversed and remanded.

Judges TYSON and ELMORE concur.