IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-959

Filed 7 May 2024

Wake County, Nos. 23 CVS 2976-910

WILSON RATLEDGE, PLLC, Plaintiff,

v.

JJJ FAMILY, LP, a Nevada Limited Partnership, and LOFTIN ENTERPRISES, LLC, General Partner of JJJ FAMILY, LP, Defendants.

Appeal by defendants from order entered 14 July 2023 by Judge John W. Smith in Superior Court, Wake County. Heard in the Court of Appeals 3 April 2024.

*Smith, Anderson, Blount, Dorsett, Mitchell, & Jernigan, LLP, by John E. Harris and J. Mitchell Armbruster, for defendant-appellants.*

*Bailey & Dixon, LLP, by David S. Coats, for plaintiff-appellee.*

ARROWOOD, Judge.

JJJ Family, LP ("JJJ Family") and Loftin Enterprises, LLC ("Loftin Enterprises") (together, "defendants") appeal from the trial court's order denying their motion to dismiss for lack of personal jurisdiction. Defendants contend the trial court erred in concluding it had specific and general jurisdiction over them. We affirm the trial court's order.

I.     Background

Peter Loftin ("decedent") was from North Carolina and oversaw two businesses, the defendant companies, as part of a larger structure to manage his

business assets and interests. JJJ Family is a Nevada limited partnership, and Loftin Enterprises is a Delaware limited liability company. Loftin Enterprises is the General Partner of JJJ Family, and both defendants maintain offices in Florida. Decedent controlled both defendant companies, and he employed Ms. Amy Usrey ("Usrey") as his assistant. Usrey managed both defendant companies from Johnston County, North Carolina, including the day-to-day management of JJJ Family.

Thomas J. Wilson ("Wilson") is a founding member of the law firm Wilson Ratledge, PLLC ("plaintiff"), and plaintiff and Wilson began representing decedent as legal counsel in the early 2000s. Plaintiff is a North Carolina law firm with its primary office in Raleigh, North Carolina and an office in Florida. Plaintiff and Wilson represented decedent in tax, business, and estate matters. Decedent passed away on 16 November 2019. Decedent's will appointed Wilson as the personal representative of his estate probated in Florida, making him the controlling authority for defendant companies.

On 14 February 2020, Wilson hired plaintiff, his own law firm, to represent defendants. The parties signed an engagement letter providing that plaintiff would represent defendants "as needed and requested and accepted by us from time to time, initially with respect to all business matters relating to the Limited Partnership, its affiliates and Partners . . . ." Wilson signed the engagement letter on behalf of defendants.

A dispute arose between Wilson and decedent's children regarding Wilson's

administration as personal representative of the Florida Estate. On 28 January 2022, Wilson and decedent's children entered into an agreement ("the Side Agreement") appointing Jorian Loftin as co-personal representative of the estate. The Side Agreement provided that Wilson and plaintiff "may each seek payment of attorney's fees and costs for its representation of [Wilson] in the Probate Administration and Adversary Case . . . ." The Side Agreement further provided under the "Governing Law" section that the agreement "shall be governed by and construed in accordance with the laws of the State of Florida," and under the "Entire Agreement" provision, that the agreement "supersedes all prior and contemporaneous agreements . . . of the parties." Plaintiff law firm signed the agreement.

On 13 February 2023, plaintiff filed suit against defendants alleging breach of contract, quantum meruit in the alternative, and tortious interference with contract. Plaintiff sought sums owed for legal representation pursuant to the engagement letter. Defendants filed a motion to dismiss for lack of personal jurisdiction pursuant to N.C.G.S. § 1A-1, Rule 12(b)(2).

On 26 June 2023, a hearing on the motion was held in Superior Court, Wake County. The trial court entered an order denying the motion on 14 July 2023. The trial court concluded that

> 3. At the time this action was instituted, Defendants were engaged in substantial activities within North Carolina. . . .

- 3 -

4. Personal jurisdiction over this action and both of the Defendants is authorized by N.C.G.S. § 1-75.4.

5. This action arises out of Defendants' contacts with North Carolina and Defendants had fair warning that they may be sued in North Carolina for services performed under the Contract.

6. Moreover, Defendants both have sufficient contacts with North Carolina.

7. The Contract also has a substantial connection with North Carolina.

8. North Carolina properly has specific jurisdiction over both of the Defendants.

9. North Carolina also properly has general jurisdiction over both of the Defendants.

10. The exercise of personal jurisdiction over this action and both of these Defendants does not violate the Due Process clause of the United States Constitution.

Defendants filed timely notice of appeal 28 July 2023.

## II.  Discussion

On appeal, defendants argue that the trial court erred in concluding it had personal jurisdiction over defendants. For the following reasons, we affirm the trial court's order.

As a preliminary matter, we note defendants' appeal from a denial of a motion to dismiss for lack of jurisdiction is interlocutory. However, "[t]he denial of a motion to dismiss for lack of jurisdiction is immediately appealable." *Cambridge Homes of*

*N.C., LP v. Hyundai Constr., Inc.*, 194 N.C. App. 407, 410 (2008) (citations omitted); N.C.G.S. § 1-277(b) (2023).

"The standard of review of an order determining personal jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court." *Cambridge Homes of N.C., LP*, 194 N.C. App. at 410 (citation omitted). Moreover, "if the trial court's findings of fact resolving the defendant's jurisdictional challenge are not assigned as error, the court's findings are presumed to be correct." *Brown v. Refuel America, Inc.*, 186 N.C. App. 631, 634 (2007) (cleaned up). We review whether the trial court's findings of fact support its conclusions of law de novo. *Nat'l Util. Rev., LLC v. Care Ctrs., Inc.*, 200 N.C. App. 301, 303 (2009) (citation omitted).

Our analysis of personal jurisdiction is two-fold. "First, jurisdiction over the action must be authorized by N.C.G.S. § 1-75.4, our state's long-arm statute. Second, if the long-arm statute permits consideration of the action, exercise of jurisdiction must not violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Skinner v. Preferred Credit*, 361 N.C. 114, 119 (2006) (citations omitted). Defendants do not challenge that the long-arm statute authorizes jurisdiction here. Thus, the sole issue is whether the trial court's exercise of jurisdiction violated due process.

"To satisfy the requirements of the due process clause, there must exist 'certain minimum contacts [between the non-resident defendant and the forum state] such

that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 695 (2005) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The factors used in determining the existence of minimum contacts include (1) quantity of the contacts, (2) nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience to the parties." *Replacements, Ltd. v. MidweSterling*, 133 N.C. App. 139, 145 (1999) (cleaned up).

There are two bases for finding sufficient minimum contacts: specific jurisdiction and general jurisdiction. *Banc of Am. Sec. LLC*, 169 N.C. App. at 696. We discuss each in turn below.

A.      General Jurisdiction

Defendants contend that the trial court erred in its determination that it had general jurisdiction over defendants. We disagree.

General jurisdiction over a defendant exists "even if the cause of action is unrelated to defendant's activities in the forum as long as there are sufficient 'continuous and systematic' contacts between defendant and the forum state." *Replacements, Ltd.*, 133 N.C. App. at 145 (citations omitted). Defendants "must engage in acts by which they purposefully avail themselves of the privilege of conducting activities within the forum State." *Lulla v. Effective Minds, LLC*, 184 N.C. App. 274, 279 (2007) (cleaned up).

In *Schaeffer v. SingleCare Holdings, LLC*, our Supreme Court held that a business with an employee working remotely in North Carolina purposely availed itself in the state. 384 N.C. 102, 112 (2023). The corporate defendant in that case paid state taxes, mailed tax documents to the plaintiff's North Carolina address, and paid him in the state. *Id.* at 111. The company contacted the plaintiff frequently and supported his work in North Carolina, and because of its contacts, the Supreme Court reasoned that the business "voluntarily and knowingly engaged with a North Carolina-based employee" and was thus subject to personal jurisdiction in the state. *Id.* at 112.

Defendants do not challenge any of the facts relevant to the court's determination of general jurisdiction. In its order, the trial court found:

> 6. The Decedent was born and raised in North Carolina and developed a substantial business in North Carolina.
> . . . .
> 12. Ms. Amy Usrey, who was the Decedent's long-time assistant, is a citizen and resident of Johnston County, North Carolina.
>
> 13. Ms. Usrey managed both Defendants JJJ and Loftin Enterprises from North Carolina.
>
> 14. Ms. Usrey has been a Manager of Defendant Loftin Enterprises since 2012, has controlling signatory authority for Defendant JJJ, and is responsible for the ultimate day-to-day management of JJJ.
>
> 15. The tax returns for both Defendants have been prepared by their accountant in North Carolina and North Carolina has been listed as their address on their tax returns.

16. Both Defendants maintained post office box mailing addresses in North Carolina.

17. Defendant Loftin Enterprises maintains a storage unit in North Carolina for their business records.

These findings are presumed to be correct, and the question becomes whether they support the court's conclusion that general jurisdiction can be exercised over defendants.

We hold these findings are sufficient to establish general jurisdiction over defendants. Like the employee in *Schaeffer*, Usrey worked for both defendant companies remotely from her home in North Carolina. Both defendants conducted business in North Carolina through Usrey, who was responsible for daily tasks such as engaging in transactions and managing finances for both defendants. Similar to the company in *Schaeffer*, defendants filed taxes and received returns in North Carolina, received mail in North Carolina, and stored business records in North Carolina. The management of defendants' businesses in North Carolina evidence their "continuous and systematic" contacts with this state, and the trial court did not err in concluding it had general jurisdiction over defendants.

## B.     Specific Jurisdiction

Defendants next argue that the trial court erred in concluding that it had specific jurisdiction over defendants. We disagree.

Specific jurisdiction over a defendant arises out of the defendant's contacts

with the forum state. *Beem USA Limited-Liability Ltd. P'ship v. Grax Consulting, LLC*, 373 N.C. 297, 303 (2020) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). "While a contractual relationship between an out-of-state defendant and a North Carolina resident is not dispositive of whether minimum contacts exists, a single contract may be a sufficient basis for the exercise of specific personal jurisdiction if it has a substantial connection with this State." *Hundley v. AutoMoney, Inc.*, 284 N.C. App. 378, 384 (2022) (citations and internal quotation marks omitted).

The trial court found, and defendants do not contest;

> 7. The Contract pertained to legal services provided by Plaintiff to Defendants for non-probate matters.
>
> 8. Thomas Wilson was authorized by Defendant JJJ to enter into the Contract.
>
> 9. The Contract was drafted in North Carolina, was accepted in North Carolina, was executed in North Carolina, and required the payment of fees to [plaintiff] in North Carolina.
>
> 10. The Contract also specifies that the agreement "shall be governed and construed in accordance with the laws if the State of North Carolina" and in numerous provisions cites to the applicability of certain North Carolina State Bar rules and North Carolina Bar Association requirements.
>
> 11. All invoices from [plaintiff] involved substantial legal work performed by [plaintiff] in North Carolina.
> . . . .
> 19. The invoices under the Contract were generated in and transmitted from North Carolina by [plaintiff] and payment was to be made to [plaintiff] in North Carolina.

The only finding of fact defendants challenge on appeal is that plaintiff was not a party to the Side Agreement. Specifically, defendants challenge the following finding:

> 18. Counsel for Defendants during the hearing handed up a "Side Agreement" dated January 28, 2022, between Thomas Wilson as personal representative of the Decedent's Estate, Jorian Loftin – the Decedent's son, and Kairee Hall as guardian for Decedent's other sons – Jett Loftin and Jagger Loftin. Neither [Wilson Ratledge], JJJ, or Loftin Enterprises are parties to the Side Agreement.

Defendants argue that because plaintiff signed the Side Agreement, they were a party to the agreement and thus were bound by the governing law and entire agreement provisions. This argument is without merit—on the first page of the Side Agreement, the document states that "WILSON, JORIAN, JETT, and JAGGER shall each be referred to hereunder as a 'party' or collectively, the 'parties.' Counsel for the parties are identified at the end of this Agreement." On its face, the Side Agreement identifies the parties to the agreement, and this designation does not include plaintiff or defendants as parties. Therefore, the trial court's finding that plaintiff was not a party to the agreement was correct.

Given that plaintiff and defendants contracted in North Carolina for plaintiff's legal representation, defendants were on notice that they could be sued in North Carolina. The trial court found that the engagement letter was drafted, accepted, and executed in North Carolina and was for legal services provided by a North Carolina law firm. The terms and conditions provided that the engagement letter

and terms would be governed by North Carolina law and referred to North Carolina State Bar rules and requirements. The trial court also found that all of plaintiff's invoices "involved substantial legal work performed by [plaintiff] in North Carolina" and required payment to plaintiff in North Carolina. These uncontested findings support the trial court's conclusion that this action arose out of defendants' contacts with North Carolina, and the trial court did not err in determining it had specific jurisdiction over defendants. *See Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 618–19 (2000) (holding personal jurisdiction existed where defendant owned and leased real property and North Carolina had an interest in adjudicating a case involving a resident arising from a contract for the resident's services); *see also A.R. Haire, Inc. v. St. Denis*, 176 N.C. App. 255, 260–61 (2006) ("Here, the only contacts are telephone calls and a few proposed contracts, one sent by Haire. Defendants never entered into a contract with A.R. Haire, Inc. either in or out of the State of North Carolina.").

### III.   Conclusion

For the foregoing reasons, we affirm the trial court's order.

AFFIRMED.

Judges WOOD and FLOOD concur.