Soma Tech. Inc. v. Dalamagas, 2017 NCBC 26.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

SOMA TECHNOLOGY, INC.,

          Plaintiff,

v.

PHOTIOS DALAMAGAS; DENOVA
MEDICAL, INC.; and HIREN
DESAI,

          Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 11100

ORDER AND OPINION ON
DEFENDANT DESAI'S MOTION TO
DISMISS FOR LACK OF PERSONAL
JURISDICTION OR, IN THE
ALTERNATIVE, STAY UNDER N.C.
GEN. STAT. § 1-75.12

1.    **THIS MATTER** is before the Court upon Defendant Hiren Desai's ("Desai")

motion to dismiss for lack of personal jurisdiction under N.C. R. Civ. P. 12(b)(2) (the

"12(b)(2) Motion") or, in the alternative, stay under N.C. Gen. Stat. § 1-75.12 (the

"Alternative Stay Motion") (collectively, the "Motions") in the above-captioned case.

2.    Having considered the Motions, the parties' briefs in support of and in

opposition to the Motions, supplemental briefs, appropriate evidence of record, and

the arguments of counsel at the hearing on December 1, 2016, the Court **DENIES**

the Motions as set forth below.

> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Daniel F.E. Smith and Robert J. King III, and Shapiro Law Offices, LLC, by Jonathan M. Shapiro, for Plaintiff Soma Technology, Inc.*
>
> *Law Office of Faith Fox, PLLC, by Paul Stevens, for Defendants Photios Dalamagas and Denova Medical, Inc.*
>
> *Tin, Fulton, Walker & Owen, PLLC, by Sam McGee, for Defendant Hiren Desai.*

Bledsoe, Judge.

# I.

## PROCEDURAL BACKGROUND

3.      Soma Technology, Inc. ("Soma" or "Plaintiff") initiated this action on June 21, 2016 by asserting claims against Defendants Photios Dalamagas ("Dalamagas") and Denova Medical, Inc. ("Denova") (collectively, the "North Carolina Defendants"). Soma filed an amended complaint on July 18, 2016 ("Amended Complaint") asserting claims against Dalamagas, Denova, and Desai (collectively, "Defendants").[1]

4.      Soma's allegations principally arise from what Soma contends is the improper interference and control of Soma Tech Pvt. Ltd. ("Soma India"), an Indian private limited company, by Desai and Dalamagas. (Am. Compl. ¶¶ 11, 20, 25–29.) Soma specifically contends that Desai and Dalamagas (and in certain respects,

---

[1] Peter Leonidas ("Leonidas"), Soma's President and a shareholder, verified the Amended Complaint, which was filed on July 18, 2016, via an affidavit filed on November 30, 2016 (the "Leonidas Affidavit"). (Leonidas Aff. ¶ 3.) "[A] verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein." *Bauer v. Douglas Aquatics*, Inc., 207 N.C. App. 65, 69, 698 S.E.2d 757, 761 (2010) (quotation marks omitted). Desai objected to the Court's consideration of the Leonidas Affidavit because it was filed only one day before the motion hearing in violation of N.C. R. Civ. P. 6, which requires opposing affidavits to be filed at least two days before a motion hearing. Because Desai had notice of the allegations of the Amended Complaint for more than four months before the hearing, however, the Court finds that Desai shall not be prejudiced by the Court's consideration of the Amended Complaint as a verified complaint and, further, that the ends of justice in these circumstances require, and are served by, the Court's consideration of the allegations of the Amended Complaint as verified. Thus, the Court elects, in the exercise of its discretion, to consider the Leonidas Affidavit to the extent it verifies the Amended Complaint. The Court declines, in the exercise of its discretion, however, to consider any other averments in the Leonidas Affidavit because Desai did not have an opportunity to respond to these sworn declarations prior to the hearing. *See* N.C. R. C. P. 6(d); *Raper v. Oliver House, LLC*, 180 N.C. App. 414, 418, 637 S.E.2d 551, 554 (2006) (recognizing that Rule 6(d) provides the trial court discretion to consider late-filed affidavits, including where "the ends of justice require").

Denova, a North Carolina corporation owned by Dalamagas, (Am. Compl. ¶¶ 2–3)) have conspired together (i) to improperly exert control over Soma India to benefit themselves personally and Denova, (Am. Compl. ¶ 44), and (ii) to harm Soma by (a) refusing to pay invoices for equipment provided by Soma's transfer agent to Soma India, (Am. Compl. ¶¶ 20, 30–31), (b) refusing to do business with Soma, (Am. Compl. ¶¶ 22, 43), and (c) directing business that should have been directed to Soma to Denova, (Am. Compl. ¶¶ 28, 31).

5.     Based on these allegations, Soma asserts claims against Dalamagas and Desai for statutory and common law unfair competition and fraud, and against all Defendants for tortious interference with contract and with reasonable business expectations.  Soma further requests (i) the entry of a declaratory judgment and permanent injunction as to all Defendants, (ii) the declaration of a constructive trust against all Defendants, (iii) punitive damages against all Defendants, and (iv) an accounting of each Defendant's business transactions with Soma India, an entity sharing common shareholders with Soma but not formally affiliated with Soma.

6.     On August 29, 2016, Desai moved to dismiss Soma's Amended Complaint as to him under Rule 12(b)(2) for lack of personal jurisdiction and, in the alternative, moved to stay this action under N.C. Gen. Stat. § 1-75.12.  That same day Desai also moved to dismiss the claims asserted against him for failure to state a claim under Rule 12(b)(6) ("Desai's 12(b)(6) Motion").

7.      On September 16, 2016, Denova and Dalamagas filed a motion to dismiss the Amended Complaint under Rule 12(b)(6) (the "North Carolina Defendants' Motion to Dismiss").

8.      On September 21, 2016, Soma filed an "alternative motion" to take jurisdictional discovery and for leave to amend the Amended Complaint in the event the Court determined it could not resolve Desai's Rule 12(b)(2) motion on the pleadings or found that any cause of action as pleaded in the Amended Complaint suffers from a pleading deficiency.  Soma did not file proposed amendments to the Amended Complaint.

9.      On September 28, 2016, the Court granted Soma's motion to take jurisdictional discovery and ordered the parties to serve discovery requests and objections.

10.     On October 7, 2016, the Court, after hearing Desai's objections to the discovery requests, ordered Desai to produce documents, answer interrogatories, and submit to a deposition of no more than two hours limited to jurisdictional issues.  The Court deferred ruling on Soma's alternative motion to amend ("Alternative Motion to Amend") until the Court considered Desai's 12(b)(6) Motion.[2]

11.     On November 22, 2016, Soma moved both to compel discovery from Desai it alleged had been authorized by the Court's October 7, 2016 Order and for additional jurisdictional discovery from the North Carolina Defendants, which

---

[2] The Court will decide Desai's 12(b)(6) Motion, the North Carolina Defendants' Motion to Dismiss, and Soma's Alternative Motion to Amend in a separate Order and Opinion.

Soma acknowledged was not contemplated by the time deadline set in the Court's October 7, 2016 Order.

12. On November 22, 2016, the Court entered an order (the "November 22, 2016 Order") requiring Desai (i) to supplement his responses to Plaintiff's document requests by providing (a) redacted invoices, additional phone records, documents concerning Desai's nephew's activities in obtaining and transporting equipment for the North Carolina Defendants in May 2015, and (b) documents concerning the assistance Desai gave to a Soma India employee to obtain a visa for travel from India to North Carolina in September 2016, and (ii) to file an affidavit detailing the procedures Desai followed in locating relevant documents in response to Soma's document requests and concerning other issues raised by Plaintiff and delineated in the November 22, 2016 Order.

13. In addition, the November 22, 2016 Order denied both Plaintiff's request to compel Desai to submit to a forensic examination of his emails and Plaintiff's request for jurisdictional discovery from the North Carolina Defendants, the latter because Plaintiff failed to show good cause for Plaintiff's failure to move for jurisdictional discovery prior to the Court's deadline in the October 7, 2016 Order. Finally, the Court ordered Desai and Plaintiff to supplement their briefs in support of and in opposition to Desai's 12(b)(2) Motion upon completion of jurisdictional discovery.

14. On November 28, 2016, Desai filed an affidavit addressing the directives set forth in the Court's November 22, 2016 Order ("Second Desai Affidavit").

15.     The Court held a hearing on the Motions on December 1, 2016, at which all parties were represented by counsel.  The Court noted at the hearing that Defendants had each moved, either directly or in the alternative, to stay this action under N.C. Gen. Stat. § 1-75.12(a), but that no Defendant had filed a stipulation of consent to suit in another jurisdiction as required for the Court to grant a motion to stay pursuant to N.C. Gen. Stat. § 1-75.12(a).

16.     On December 2, 2016, the Court entered an order directing Desai and his co-Defendants to file a stipulation of consent to jurisdiction in another jurisdiction by December 15, 2016 if any Defendant intended for the Court to consider a stay of this action.  No Defendant filed a stipulation of consent to jurisdiction in any other forum.

17.     The Motions are now ripe for resolution.

II.

DESAI'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

18.     Desai argues that this Court lacks jurisdiction over him because Plaintiff cannot point to "one contract Defendant has entered here," "one dollar . . . paid or received to anyone in North Carolina," or that "Desai is in control of Soma India." (Desai's Supplemental Mem. Supp. 12(b)(2) Motion 2.)  Desai fails, however, to cite any relevant case law to support his contentions that these factors are determinative of personal jurisdiction, and, instead, contends without persuasive support that more contacts with North Carolina than are present here are required

to establish personal jurisdiction when an out-of-state plaintiff seeks to sue an out-of-state defendant in North Carolina.

19. Although the Court agrees that a trial court may consider the plaintiff's residence when determining whether jurisdiction is proper, *see Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 679, 231 S.E.2d 629, 632 (1977), a plaintiff's residence is not determinative of this Court's jurisdiction because no specific fact or contact controls whether a defendant has minimum contacts with the forum, *see B.F. Goodrich Co. v. Tire King of Greensboro, Inc.*, 80 N.C. App. 129, 132, 341 S.E.2d 65, 67 (1986) ("No single factor controls, but they all must be weighed in light of fundamental fairness and the circumstances of the case."). Based on the Court's review of the record and controlling legal precedent, the Court concludes, as explained below, that Desai has sufficient minimum contacts with this State for the Court to properly exercise personal jurisdiction over Desai in the circumstances presented here.

A. Standard of Review

20. A North Carolina court has jurisdiction over a nonresident defendant if (1) statutory authority for the exercise of jurisdiction under the long-arm statute, N.C. Gen. Stat. § 1-75.4, exists and (2) the exercise of jurisdiction comports with due process under federal law. *See e.g.*, *Skinner v. Preferred Credit*, 361 N.C. 114, 119, 638 S.E.2d 203, 208 (2006).

21. A complaint must allege facts sufficient to support the inference of jurisdiction but does not need to plead the particulars of jurisdiction. *Williams v.*

*Inst. for Computational Studies*, 85 N.C. App. 421, 428, 355 S.E.2d 177, 182 (1987). However, where, as here, the defendant challenges the court's jurisdiction under Rule 12(b)(2), the burden falls on the plaintiff to establish that grounds for asserting jurisdiction exist. *Id.* at 424, 355 S.E.2d at 179; *see also Mannise v. Harrell*, 791 S.E.2d 653, 659 (N.C. Ct. App. 2016) (reversing finding of personal jurisdiction when plaintiff presented no evidence to rebut defendant's affidavit stating that he had no contacts with North Carolina).

22.     If the court is presented with competing affidavits and nothing more, the plaintiff must only establish a *prima facie* basis for jurisdiction. *Deer Corp. v. Carter*, 177 N.C. App. 314, 322, 629 S.E.2d 159, 166 (2006). However, if the court holds an evidentiary hearing, the trial court must act as fact-finder and determine personal jurisdiction by a preponderance of the evidence. *Id.*; *see also Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 694, 611 S.E.2d 179, 183 (2005) (discussing Rule 12(b)(2) standard of review). If both parties submit competing affidavits and depositions, and the trial court holds a hearing on personal jurisdiction, the trial court should consider the matter as if an evidentiary hearing had occurred. *Deer Corp.,* 177 N.C. App. at 322, 629 S.E.2d at 166; *see also Parker v. Town of Erwin*, 776 S.E.2d 710, 722 (N.C. Ct. App. 2015) (finding that where each party submitted affidavits, depositions, and other documentary evidence for the trial court's consideration, the court should act as fact-finder and determine personal jurisdiction by a preponderance of the evidence).

23. Because the Court has considered the parties' competing submissions of evidence and held a hearing on the Motion, the Court will consider the Motion to Dismiss subject to the requirements attendant to an evidentiary hearing and thus acts as a fact finder and determines the facts relating to the exercise of personal jurisdiction over Desai by a preponderance of the evidence.

B. North Carolina's Long-Arm Statute

24. N.C. Gen. Stat. § 1-75.4(1)(d) provides that a North Carolina trial court has personal jurisdiction over a defendant "whether the claim arises within or without this State, . . . [if the defendant] [i]s engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." Because the North Carolina Supreme Court has concluded that through "the enactment of G.S. 1-75.4(d)(1) . . . the General Assembly intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process," *Dillon*, 291 N.C. at 676, 231 S.E.2d at 630, personal jurisdiction exists so long as the defendant has engaged in some activity in North Carolina and the exercise of personal jurisdiction over the defendant comports with due process, *Skinner*, 361 N.C. at 119, 638 S.E.2d at 208; *see also Rossetto USA, Inc. v. Greensky Fin., LLC,* 191 N.C. App. 196, 199, 662 S.E.2d 909, 912 (2008).

25. As a result, "the question of statutory authority collapses into one inquiry—whether defendant has the minimum contacts necessary to meet the requirements of due process." *Cambridge Homes of N.C. L.P. v. Hyundai Constr.,*

*Inc.*, 194 N.C. App. 407, 412, 670 S.E.2d 290, 295 (2008) (quoting *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 671, 541 S.E.2d 733, 736 (2001)).

C. Due Process—"Minimum Contacts"

26. "To satisfy the due process prong of the personal jurisdiction analysis, there must be sufficient 'minimum contacts' between the nonresident defendant and our state 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Skinner*, 361 N.C. at 122, 638 S.E.2d at 210 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

27. A court may have personal jurisdiction through general jurisdiction or specific jurisdiction. *Id.* "General jurisdiction exists when the defendant's contacts with the state are not related to the cause of action but the defendant's activities in the forum are sufficiently 'continuous and systematic.'" *Id.* "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

28. "Specific jurisdiction exists when the cause of action arises from or is related to defendant's contacts with the forum." *Skinner*, 361 N.C. at 122, 638 S.E.2d at 210. The trial court must focus on "the relationship among the defendant, the forum, and the litigation" to determine whether the court may assert specific jurisdiction over a nonresident defendant. *Tom Togs, Inc. v. Ben Elias Indus., Inc.*, 318 N.C. 361, 366, 348 S.E.2d 782, 786 (1986). The relationship with the forum

"must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (citing *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 475 (1985)); *see Centura Bank v. Pee Dee Express, Inc.*, 119 N.C. App. 210, 213, 458 S.E.2d 15, 18 (1995) (noting that minimum contacts analysis "focuses on the actions of the non-resident defendant over whom jurisdiction is asserted, and not the unilateral actions of some other entity"). These contacts must be intentional and purposeful and not based solely on "random, fortuitous, or unilateral activity of another party or a third person." *Cambridge Homes*, 194 N.C. App. at 413, 670 S.E.2d at 296.

29. Therefore, the trial court must carefully scrutinize the facts of each case to determine if a defendant's dispute-related contacts with the forum state constitute sufficient minimum contacts to exercise personal jurisdiction over the defendant in the forum state. *Deer Corp.*, 177 N.C. App. at 327, 629 S.E.2d at 169; *see also B.F. Goodrich*, 80 N.C. App. at 131, 341 S.E.2d at 67 (observing that, for minimum contacts analysis, primary factors include "quantity of contacts, nature and quality of contacts, and the source and connection of the cause of action with these contacts" and secondary factors include "interest of the forum state and convenience to the parties").

30. In engaging in this analysis, our courts have made clear that "[t]o base personal jurisdiction on the bare fact of a defendant's status as, *e.g.*, corporate officer or agent, would violate his due process rights." *Saft Am., Inc. v. Plainview Batteries, Inc.*, 189 N.C. App. 579, 595, 659 S.E.2d 39, 49 (2008) (Arrowood, J.,

dissenting), *reversed for reasons stated in dissent*, 363 N.C. 5, 673 S.E.2d 864 (2009) (per curiam). Thus, "North Carolina precedent has consistently required that, before a defendant is subject to personal jurisdiction, there be evidence that he personally took some action subjecting him to North Carolina's jurisdiction." *Id.*

31. In particular, North Carolina law is clear that "personal jurisdiction over a defendant may . . . be based on the contacts he has with the state in the course of his private life" and that a defendant's contacts "count" even "if they were made as part of his employment." *Id.* at 596, 659 S.E.2d at 50; *see, e.g., Godwin v. Walls*, 118 N.C. App. 341, 354–55, 455 S.E.2d 473, 483 (1995) (finding personal jurisdiction based on defendant's actions taken as part of his employment); *see also Calder* v. *Jones*, 465 U.S. 783, 790 (1984) (holding that defendants' "status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually. . . . In this case, petitioners are primary participants in an alleged wrongdoing intentionally directed at a [forum State] resident, and jurisdiction over them is proper on that basis.").

32. Ultimately, the trial court must determine "whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 134 S. Ct. at 1125.

D. <u>Findings of Fact</u>

33. Based on the Court's review of the parties' exhibits, the verified Amended Complaint, Desai's deposition and affidavits, and the arguments of counsel at the

hearing, the Court makes the following findings of fact solely for the purpose of deciding the 12(b)(2) Motion.

34. Desai is a resident of Massachusetts. (Am. Compl. ¶ 5; Desai Aff. ¶ 3.)

35. Dalamagas is a resident and citizen of North Carolina and has lived in North Carolina at all times relevant to the pending dispute. (Am. Compl. ¶ 2; Desai Dep. 10:24–11:6.)

36. Denova is a corporation organized and existing under North Carolina law with its principal place of business in North Carolina. (Am. Compl. ¶ 3; Desai Dep. 11:8–10.)

37. Denova only has offices in North Carolina. (Desai Dep. 11:11–13.)

38. Desai was an employee of Soma until February 26, 2015. (Am. Compl. ¶ 24.) In that role, he was actively involved with Soma India's business. (Desai Dep. 25:15–25:22.)

39. Desai is a shareholder of Soma India and has been actively involved in the meetings and votes of shareholders and directors of Soma India. (Am. Compl. ¶¶ 13, 25, 36, 39; Desai Aff. ¶ 6; Desai Dep. 25:15–26:8.)

40. Desai had a contract to provide services as an independent consultant to Soma India from March 2015 until June 2016. (Desai Dep. 24:4–25:11; Desai Dep. Ex. 1 p. 4.)

41. Desai has been, and continues to be, involved with the operation and business of Soma India. (Desai Dep. 24:4–25:11, 26:9-27:11, 28:12-29:5, 29:18–

29:22, 30:1–30:4; 30:11–30:14, 31:16-31:22, 31:25–32:8, 33:7-33:15, 33:19–34:1, 35:11–35:10, 39:19–40:4; Desai Dep. Ex. 1 p. 3–4, Exs. 3, 4, 6, 7.)

42. Denova and Soma India are each other's preferred supplier and preferred dealer and have agreed not to compete with each other. Soma India is Denova's partner for distribution in India. (Desai Dep. 57:24–58:8, 61:2–61:8, 61:14–62:8; Desai Dep. Ex. 2 pp. 28, 67, 58.)

43. Desai made and accepted frequent telephone calls to and from North Carolina in communicating with co-defendant Dalamagas. These telephone calls involved business matters concerning co-defendant Denova and Soma India and relate to the matters in dispute in this litigation. (Desai Dep. 36:16–36:19, 37:13–38:8, 49:22–50:6; 114:10–115:3; Desai Dep. Ex. 1 pp. 5–6, Ex. 2 pp. 1–19.) Based on the records produced by Desai for the period between May 27, 2016 and September 26, 2016, Desai called Dalamagas in North Carolina 37 times and received phone calls from Dalamagas in North Carolina on 15 additional occasions. (Desai Dep. 114:10–115:3; Desai Dep. Ex. 2 pp. 1–19.)

44. Desai sent, forwarded, received, and was copied on frequent emails from co-defendant Dalamagas in North Carolina, and employees of co-defendant Denova in North Carolina. These emails involved business matters and opportunities concerning Soma India and North Carolina-based Denova and relate to the matters in dispute in this litigation. (Desai Dep. 37:13–38:9; Desai Dep. Ex. 2 pp. 22, 23, 25, 26–27, 28–30, 33, 34, 36, 37, 39, 40, 43, 44–48, 49–50, 51–77, 84–92, 96–99.)

45.     Desai was aware of and copied on numerous invoices sent by co-defendant Denova in North Carolina to Soma India and on payment receipts for invoices, which were issued by co-defendant Denova in North Carolina and paid by Soma India to Denova in North Carolina. These invoices are at issue in this litigation. (Desai Dep. 53:4–53:24; Desai Dep. Ex. 2 pp. 20–21, 78–93, 93–95, 100–01.)

46.     Desai has helped, and continues to help, with locating business opportunities for North Carolina-based Denova, (Dep. 56:19–59:8, 89:9–90:6; Desai Dep. Ex. 2 p. 25), and has made arrangements for transportation of Denova's purchases to Denova in North Carolina, (Desai Dep. Ex. 8).

47.     Desai directed a Denova employee in North Carolina to pay an invoice owed by Soma India that was issued by a third party. (Desai Dep. 69:1–72:13; Dep. Ex. 2 pp. 102–04).

48.     Desai helped an employee of Soma India obtain a visa to travel to North Carolina to train at Denova. (Desai Dep. 95:13–96:22; Desai Dep. Exs. 10, 16.)

49.     Desai traveled to North Carolina for business twice over a nine-month period, visited Dalamagas during both trips, and also visited Denova's principal place of business in North Carolina. (Desai Dep. 38:20–38:23; 42:21–43:13; Desai Dep. Ex. 1, pp. 9–10; *contra* Desai Aff. ¶ 4(a).)

50.     On his two trips to North Carolina, Desai contacted executives of medical equipment companies in North Carolina for business purposes and to further advance the interests of North Carolina-based Denova and Soma India. (Desai Dep. 43:14–44:18, 46:11–47:3, 47:14–49:11.)

51. Desai's travel to North Carolina and correspondence with co-defendants Dalamagas and Denova through e-mail and telephone calls directed to and from North Carolina was part of Desai's effort to coordinate the business of Soma India to benefit himself, Dalamagas, and Denova and to shift business away from Soma. (Desai Aff. ¶¶ 5, 7, 9–10; Desai Dep. 23:8–24:9, 35:11–36:10, 36:16–36:19, 37:13–38:8, 38:20–38:23.)

52. The record before the Court of Desai's contacts with North Carolina is not complete because some documents, emails, phone records, or emails have been deleted, are missing, or were not obtained by Desai. (Desai Dep. 13:14–14:1 (documents); 15:23–16:23, 17:16–19:13 (emails); 21:8–22 (phone records); 52:5–24 (text messages); *see e.g.*, Desai Dep. 80:21–23; Second Desai Aff. ¶¶ 2–3.)

53. Desai has not stipulated to consent to suit in another jurisdiction for the claims raised in this case.

54. Dalamagas and Denova have not stipulated to consent to suit in another jurisdiction for the claims raised in this case.

E. Conclusions of Law

55. Based on the Court's findings of fact, the Court concludes, as a matter of law, that Plaintiff has established, by a preponderance of the evidence, that Desai has engaged in substantial activity within this State, N.C. Gen. Stat. 1-75.4(1)(d), and has sufficient minimum contacts with North Carolina "such that the maintenance of [this] suit does not offend 'traditional notions of fair play and

substantial justice,'" *Skinner*, 361 N.C. at 122, 638 S.E.2d at 210 (quoting *Int'l Shoe Co.*, 326 U.S. at 316).

56.     Desai has initiated numerous contacts with North Carolina arising in connection with the current dispute. *See Centura Bank*, 119 N.C. App. at 213–14, 458 S.E.2d at 18; *Walden*, 134 S. Ct. at 1122.   These contacts constitute a substantial connection with North Carolina that establish Desai's minimum contacts with this State and are sufficient for the Court's exercise of specific jurisdiction over Desai.

57.     Desai's relevant contacts with this forum are not merely based on his contract to provide services to Soma India or on contacts Soma India has with North Carolina, *see Saft Am., supra* ¶ 30, and are not based simply on his relationship with Plaintiff or a third-party to this litigation.   Rather, Desai's relevant contacts are based on the extensive and systematic contacts he has had, and frequently initiated, with Denova and Dalamagas in North Carolina that relate to this dispute. *See Cambridge Homes*, 194 N.C. App. at 413, 670 S.E.2d at 296 ("Nonresident defendants must engage in acts by which they purposely avail themselves of the privilege of conducting activities within the forum State to support a finding of minimum contacts.") (citations and quotation marks omitted).

58.     Desai's contacts with North Carolina are not attenuated contacts arising from interaction with a person or entity that happens to be a resident or citizen of North Carolina but instead are intentional contacts he has directed at North Carolina and at North Carolina residents and citizens. *Compare Walden*, 134 S. Ct.

at 1124 (holding that a Nevada court lacked personal jurisdiction when defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada"), *with Calder*, 465 U.S. at 785–86, 788–89 (holding that a California court had personal jurisdiction over defendant on a libel claim where defendant contacted sources in California for information used in the article at issue and frequently traveled to California for business, the acts described in the article occurred in California, the article was distributed in California, and plaintiff's reputational injury was predominately felt in California).

59.   Desai exchanged numerous calls and emails to and from Denova and Dalamagas in North Carolina, and traveled on several occasions to and from North Carolina. These were all meaningful contacts with North Carolina because they involved a North Carolina entity and a North Carolina resident in North Carolina, the conduct of the North Carolina Defendants' business in North Carolina, and invoices sent by the North Carolina Defendants to Soma India, all of which are closely intertwined with Plaintiff's claims in this action. *See, e.g.*, *Walden*, 134 S. Ct. at 1222 ("physical entry into the State — either by the defendant in person or through an agent, goods, mail, or some other means — is certainly a relevant contact"); *Brown v. Ellis*, 363 N.C. 360, 361–63, 678 S.E.2d 222, 222–24 (2009) (holding that where an out-of-state defendant made telephone calls and sent emails to plaintiff's wife, who resided in North Carolina, the court could properly exercise personal jurisdiction over defendant in alienation of affections case).

60.   Desai has, through his activities described above, "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws," and, as a result, can reasonably anticipate being haled into a North Carolina court to answer for his alleged conduct. *Rossetto USA*, 191 N.C. App. at 201–03, 662 S.E.2d at 913–14 (quoting *Skinner*, 361 N.C. at 123, 638 S.E.2d at 210–11) (holding that "consistent and continuous two-year interaction" of calls and payments to buyer in North Carolina supported conclusion that defendant "purposefully availed himself of the privilege of conducting activities in North Carolina").

61.   The convenience of resolving the claims against Desai and the North Carolina Defendants in North Carolina outweighs the inconvenience to Desai of litigating in North Carolina, particularly when Desai, through his conduct, could reasonably anticipate being haled into a North Carolina court, and when it appears that no other forum may have jurisdiction over all Defendants. *See generally B.F. Goodrich*, 80 N.C. App. at 133, 341 S.E.2d at 68.

62.   There is no evidence to suggest that Desai would be "unfairly prejudiced" by litigating Plaintiff's claims in North Carolina. *See, e.g.*, *Inspirational Network, Inc. v. Combs*, 131 N.C. App. 231, 241, 506 S.E.2d 754, 761 (1998) (finding lack of prejudice a factor that weighed in favor of personal jurisdiction over out-of-state defendants).

63.   Considering the circumstances presented here, and balancing all of the considerations set forth above, the Court concludes that the Court's exercise of

specific jurisdiction over Desai in this action is reasonable and fundamentally fair and comports with traditional notions of fair play and substantial justice. The Court thus concludes that Desai's 12(b)(2) Motion should be denied.

III.

DESAI'S ALTERNATIVE MOTION TO STAY

64. For the trial court to enter a stay of an action in North Carolina so that the action may proceed in another jurisdiction, N.C. Gen. Stat. § 1-75.12(a) requires that the "moving party . . . stipulate his consent to suit in another jurisdiction found by the judge to provide a convenient, reasonable and fair place of trial." Accordingly, absent a stipulation of consent by the moving party, the Court must deny the moving party's motion to stay.

65. Despite the instructions to Defendants in the Court's December 2, 2016 Order, Desai has not filed a stipulation of consent to jurisdiction in Connecticut, where there is ongoing litigation in state court between Desai and Leonidas and in federal court between Dalamagas and Leonidas, or in any other state. Therefore, the Court concludes that Desai's Alternative Stay Motion should be denied for failure to comply with N.C. Gen. Stat. § 1-75.12(a).

66. Moreover, even if Desai had properly complied with section 1-75.12, Desai has failed to carry his burden to justify relief under that section. Our courts have held that a trial court must find that "(1) a substantial injustice would result if the trial court denied the stay, (2) the stay is warranted by those factors present, and (3) the alternative forum is convenient, reasonable, and fair." *Wachovia Bank v.*

*Harbinger Capital Partners Master Fund 1, Ltd.*, 201 N.C. App. 507, 520, 687 S.E.2d 487, 495 (2009) (quoting *Lawyers Mut. Liab. Ins. Co. of N.C. v. Nexsen Pruet Jacobs & Pollard*, 112 N.C. App. 353, 357, 435 S.E.2d 571, 574 (1993)).

67. Based on the Court's review of the evidence of record, the Court concludes that Desai has not offered sufficient evidence to carry his burden to merit a stay at this stage in the litigation. In particular, the Court cannot conclude that a substantial injustice would result if the Court denied the stay and allowed this litigation to go forward against Desai in North Carolina or that a stay is warranted in light of the substantial and meaningful contacts Desai has had with North Carolina in connection with the facts relevant to this dispute.

IV.

CONCLUSION

68. Based on the foregoing, the Court hereby **DENIES** both Desai's Motion to Dismiss under Rule 12(b)(2) and Desai's Alternative Stay Motion under N.C. Gen. Stat. § 1-75.12(a).

**SO ORDERED**, this the 24th day of March, 2017.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases