USConnect, LLC v. Sprout Retail, Inc., 2017 NCBC 36.

STATE OF NORTH CAROLINA

GUILFORD COUNTY

USCONNECT, LLC,

       Plaintiff,

v.

SPROUT RETAIL, INC.,

       Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 2554

ORDER AND OPINION
ON DEFENDANT'S MOTION TO
DISMISS OR FOR A MORE
DEFINITE STATEMENT

1.    This case involves a dispute between Plaintiff USConnect, LLC, and Defendant Sprout Retail, Inc. ("Sprout") over a contract and technology related to a cashless payment system for food services, vending machines, and unattended kiosks. USConnect claims that Sprout has breached the parties' service agreement and is misappropriating USConnect's trade secrets. In addition, USConnect seeks a declaratory judgment that Sprout does not own intellectual property rights to certain software used by USConnect.

2.    Sprout moved to dismiss each cause of action for lack of personal jurisdiction and failure to state a claim under Rules 12(b)(2) and 12(b)(6) of the North Carolina Rules of Civil Procedure. Sprout also moved, in the alternative, for a more definite statement under Rule 12(e).

3.    Having considered the motion, the briefs supporting and opposing the motion, and the parties' arguments at the hearing on April 12, 2017, the Court **GRANTS in part** and **DENIES in part** Sprout's motion.

*Womble Carlyle Sandridge & Rice, LLP by Charles Burke and Stephen F. Shaw for Plaintiff.*

*Thomason Law Office by Charles L. Thomason, and Higgins Benjamin, PLLC by Gilbert J. Andia, Jr., for Defendant.*

Conrad, Judge.

## I.
## BACKGROUND

4. The Court does not make findings of fact on a motion to dismiss under Rule 12(b)(6). The following factual summary is drawn from relevant allegations in the complaint and the attached exhibits.

5. USConnect is a North Carolina company that offers "cashless payment account services and other next-generation vending and food services solutions, including micro market kiosks, vending machine, cafeteria and related food service offerings through its network of affiliates, to customers throughout the United States." (Compl. ¶ 4.)

6. In April 2013, USConnect entered into the Sprout Service and License Agreement ("Agreement") with Sprout, a New Jersey corporation, to develop the software to support communications between the network-connected vending machines or kiosks, the network itself, and related hardware. (Compl. ¶¶ 5, 16, Ex. A.) As part of the Agreement, USConnect and Sprout provided each other with access to certain confidential information, and Sprout gave USConnect permission to "utilize the Sprout System for Cashless Equipment, Markets and Foodservice outlets." (Compl. Ex. A p.5; *see also* Compl. ¶ 27.) To enable "affiliates and other developers

to interface" with USConnect's network, USConnect and Sprout "published aspects" of the software "to publicly-accessible websites." (Compl. ¶ 19.)

7. The Agreement includes provisions governing the use of confidential information. (*See* Compl. Ex. A pp.5, 9–10.) It also provides that "Sprout shall not form, participate in or provide services to a similar or competing organization to [USConnect]." (Compl. Ex. A. p.4.)

8. This Agreement establishes a two-year term unless USConnect and Sprout agreed otherwise. (Compl. Ex. A. p.2.) Thus, in the absence of an extension, the term of the Agreement would have expired on April 1, 2015. According to the complaint, USConnect and Sprout continued to conduct business with each other under the terms of the Agreement after April 1, 2015. (Compl. ¶ 21.)

9. In early 2016, Sprout sent USConnect a proposal for a new contract. (Compl. ¶ 22.) As part of the negotiation process, the parties signed a letter, dated March 26, 2016, that stated their "mutual intention to complete a new contractual arrangement." (Compl. Ex. B; *see also* Compl. ¶ 23.) The parties aimed to complete the new agreement by May 1, 2016. (Compl. Ex. B.) The letter further stated that "[e]ffective with and as part of that New Agreement, the parties will end the terms of service under the Old Agreement so that it is clear that . . . services [provided] by Sprout after the transition period will be pursuant to the terms of the New Agreement." (Compl. Ex. B.)

10. Sprout and USConnect were unable to agree to terms for a new contract. (Compl. ¶ 26.) Sprout has since threatened to terminate USConnect's payment

services, and as a result, USConnect "independently developed a temporary replacement gateway payment system," using "industry-accepted open standards, publicly-available automated programming interfaces and other standard terminology." (Compl. ¶¶ 35–37.) Sprout has claimed that USConnect is unauthorized to use this temporary system, including publicly available technology that supports it. (Compl. ¶ 37.)

11. USConnect also alleges that Sprout has violated the Agreement "by coordinating with a direct competitor of USConnect to offer" competing services. (Compl. ¶ 28.) It further alleges that Sprout has used USConnect's confidential information and trade secrets to develop competing services and to solicit USConnect's customers. (*See* Compl. ¶¶ 29, 30.)

12. USConnect filed this suit on January 5, 2017. Sprout moved to dismiss the complaint on February 7, 2017, and USConnect filed its response on March 2, 2017. Sprout did not file a reply. The motion is ripe for determination.

II.
ANALYSIS

A. Personal Jurisdiction

13. Sprout argues, without citing any legal authority, that the complaint should be dismissed for lack of personal jurisdiction. (*See* Mem. of Law in Supp. Of Def.'s Mot. to Dismiss and for More Definite Stmt. 16–17 ["Def.'s Mem."].) Sprout argues that it has no presence in North Carolina, that the Court cannot exercise jurisdiction solely based on the Agreement, and that USConnect pleaded jurisdiction "formulaically." (Def.'s Mem. 17.) USConnect responds that Sprout made substantial

and repeated contacts with North Carolina in the course of executing and performing its obligations under the Agreement. (*See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss or for More Definitive Stmt. 20–22 ["Pl.'s Opp'n."].) USConnect also submitted the Affidavit of Jeffrey S. Whitacre in support of its response. Having reviewed the parties' evidence and arguments, the Court concludes that it may exercise personal jurisdiction over Sprout.

14. "A North Carolina court has jurisdiction over a nonresident defendant if (1) statutory authority for the exercise of jurisdiction under the long-arm statute, N.C. Gen. Stat. § 1-75.4, exists and (2) the exercise of jurisdiction comports with due process under federal law." *Soma Tech., Inc. v. Dalamaga*s, 2017 NCBC LEXIS 26, at *8 (N.C. Super. Ct. Mar. 24, 2017). As relevant here, North Carolina's long-arm statute confers personal jurisdiction when the action "[a]rises out of a promise, made anywhere to the plaintiff . . ., by the defendant to perform services within this State or to pay for services to be performed in this State by the plaintiff" or "[a]rises out of services actually performed for the plaintiff by the defendant within the State, or services actually performed for the defendant by the plaintiff within this State if such performance within this State was authorized or ratified by the defendant." N.C. Gen. Stat. § 1-75.4(5)(a)–(b).

15. The North Carolina Supreme Court has construed the long-arm statute liberally "to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process." *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977). Accordingly, "the question of statutory

authority collapses into one inquiry—whether defendant has the minimum contacts necessary to meet the requirements of due process." *Cambridge Homes of N.C. L.P. v. Hyundai Constr., Inc.*, 194 N.C. App. 407, 412, 670 S.E.2d 290, 295 (2008) (quoting *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 671, 541 S.E.2d 733, 736 (2001)).

16.    Here, the relevant inquiry is whether the Court has specific jurisdiction, which "exists when the cause of action arises from or is related to defendant's contacts with the forum." *Skinner v. Preferred Credit*, 361 N.C. 114, 122, 638 S.E.2d 203, 210 (2006).    The focus is "the relationship among the defendants, this State, and the causes of action." *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 366, 348 S.E.2d 782, 786 (1986).    The relationship with the State "must arise out of contacts that the 'defendant *himself*' creates." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (U.S. 2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).    A defendant's contacts with this State will satisfy minimum-contact requirements when the defendant "purposely avail[s] [himself] of the privilege of conducting activities within the forum State." *Cambridge Homes*, 194 N.C. App. at 413, 670 S.E.2d at 296 (quoting *Lulla v. Effective Minds, LLC,* 184 N.C. App. 274, 279, 646 S.E.2d 129, 133 (2007)).

17.    The relevant facts are undisputed.    In April 2013, Sprout entered into the Agreement with USConnect, a North Carolina company.  (Aff. of Jeffery S. Whitacre ¶ 3 ["Whitacre Aff."].)  The Agreement states that its construction and application shall be governed by "the laws of the State of North Carolina."  (Whitacre Aff. Ex. B p.12.)  As part of Sprout's performance of the Agreement, Sprout representatives

made dozens of visits to North Carolina, initiated communications with USConnect's North Carolina employees nearly every day, and mailed monthly bills to USConnect in North Carolina for the services Sprout was performing under the Agreement. (*See* Whitacre Aff. ¶ 6.) Sprout is also negotiating with one of USConnect's North Carolina competitors for a license to networked vending machine technology and soliciting customers located in North Carolina to use Sprout's services instead of USConnect's. (*See* Whitacre Aff. ¶ 5.)

18.  Sprout has not rebutted this evidence, and it did not file a reply brief. In addition, at the hearing, Sprout's counsel conceded that Sprout does not dispute that its representatives routinely initiated communications and made visits to North Carolina in carrying out its obligations under the Agreement.

19.  The Court concludes, based on the undisputed evidence, that Sprout has sufficient minimum contacts with North Carolina to warrant the exercise of personal jurisdiction. Sprout's contacts with North Carolina are extensive and directly connected to the causes of action recited in USConnect's complaint. *See B.F. Goodrich Co. v. Tire King of Greensboro, Inc.*, 80 N.C. App. 129, 132, 341 S.E.2d 65, 67 (1986) (personal jurisdiction factors include "(1) quantity of contacts, (2) nature and quality of contacts, and (3) the source and connection of the cause of action with these contacts"). By entering into a contract with a North Carolina corporation and routinely sending representatives to North Carolina to perform contractual services, Sprout purposefully availed itself of "the privilege of conducting activities" in North Carolina. *Cambridge Homes*, 194 N.C. App. at 413, 670 S.E.2d at 296; *see also*

*Centura Bank v. Pee Dee Express, Inc.*, 119 N.C. App. 210, 213–14, 458 S.E.2d 15, 19 (1995). This conduct also falls squarely within the requirements of the long-arm statute. *See* N.C. Gen. Stat. § 1-75.4(5)(a)–(b).

20. Other factors further support the exercise of personal jurisdiction. It is relevant, for example, that the parties' Agreement is governed by North Carolina law. *See, e.g.*, *Inspirational Network, Inc. v. Combs*, 131 N.C. App. 231, 241–42, 506 S.E.2d 754, 761–62 (1998). In addition, Sprout has not suggested in any way that it would be "unfairly prejudiced" by litigating the pending claims in North Carolina. *Id.* at 241. The convenience of resolving these claims in North Carolina therefore outweighs any inconvenience to Sprout that may stem from litigating in this forum. *See Soma Tech.*, 2017 NCBC LEXIS 26, at *21.

21. Having weighed all of the factors "in light of fundamental fairness and the circumstances of the case," the Court concludes that the exercise of personal jurisdiction over Sprout comports with traditional notions of fair play and substantial justice. *B.F. Goodrich*, 80 N.C. App. at 132, 341 S.E.2d at 67. The Court denies Sprout's Rule 12(b)(2) motion to dismiss.

### B. Rule 12(b)(6) Motion to Dismiss and Rule 12(e) Motion for a More Definite Statement

22. The Court, in deciding a Rule 12(b)(6) motion, treats the well-pleaded allegations of the complaint as true, *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970), and views the facts in a light most favorable to the non-moving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986). The Court "may properly consider documents which are the subject of a plaintiff's

complaint and to which the complaint specifically refers." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001). Accordingly, a Rule 12(b)(6) motion should be granted only "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good claim; and (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim." *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986).

23. The Court, when ruling on a Rule 12(e) motion for a more definite statement, considers whether the complaint "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." N.C. R. Civ. P. 12(e). Courts exercise their discretion when deciding whether to grant a motion for a more definite statement, but the motions are sparingly granted "because pleadings may be brief and lacking in factual detail." *Ross v. Ross*, 33 N.C. App. 447, 454, 235 S.E.2d 405, 410 (1977).

1. Declaratory Judgment

24. The purpose of the Declaratory Judgment Act is to "settle and afford relief from uncertainty and insecurity, with respect to rights, status, and other legal relations." *Nationwide Mut. Ins. Co. v. Roberts*, 261 N.C. 285, 287, 134 S.E.2d 654, 657 (1964) (quoting *Walker v. Phelps*, 202 N.C. 344, 349, 162 S.E. 727, 729 (1932)). "A motion to dismiss for failure to state a claim is seldom appropriate 'in actions for declaratory judgments, and will not be allowed simply because the plaintiff may not be able to prevail.'" *Morris v. Plyler Paper Stock Co.*, 89 N.C. App. 555, 557, 366

S.E.2d 556, 558 (1988) (quoting *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 439, 206 S.E.2d 178, 182 (1974)).  Accordingly, the Court must dismiss a declaratory-judgment claim only "when the complaint does not allege an actual, genuine existing controversy."  *Legalzoom.com, Inc. v. N.C. State Bar*, 2012 NCBC LEXIS 49, at *9 (N.C. Super. Ct. Aug. 27, 2012) (quoting *N.C. Consumers Power*, 258 N.C. at 439, 206 S.E.2d at 182).

25.    USConnect has alleged a genuine controversy.  USConnect alleges that it has "independently develop[ed] a temporary replacement gateway payment system," using "industry-accepted open standards, publicly-available automated programming interfaces and other standard terminology."  (Compl. ¶¶ 36, 37.)  Sprout, however, claims that this software is Sprout's proprietary technology, that USConnect's ongoing use of the software violates Sprout's intellectual property rights, and that USConnect is not entitled to use this system.  (Compl. ¶¶ 9, 33, 37, 39.)  According to the complaint, Sprout has threatened to take action adverse to USConnect.  (Compl. ¶¶ 3, 35.)  USConnect therefore seeks a declaration "that Sprout has no exclusive rights in and to the aspects of the Software used by USConnect in connection with the temporary gateway payment system, and that Sprout has no lawful grounds either based upon alleged intellectual property rights or otherwise to restrict or to threaten to restrict USConnect's use thereof."  (Compl. ¶ 42.)

26.    Sprout's argument in support of its motion to dismiss is difficult to understand.  Sprout does not appear to refer to USConnect's temporary gateway payment system at all, much less deny that it objects to USConnect's use of the

system. (*See* Def.'s Mem. 4–6.) Instead, as best the Court can understand, Sprout contends that USConnect's requested relief would strip Sprout of its intellectual property rights—the implication being that Sprout owns rights to the technology USConnect is using. (Def.'s Mem. 4–5.) This argument seems to confirm, rather than dispel, the existence of a genuine dispute.

27. Sprout's remaining argument—that a declaratory judgment is impermissible because the parties' Agreement expired in 2015—is equally confusing. (Def.'s Mem. 5.) The issue raised by USConnect is whether it may use, now and in the future, certain software that it alleges to be publicly available. The expiration of the Agreement (which is contested) does not foreclose a declaration on that dispute.

28. USConnect has adequately alleged a genuine dispute. The Court denies Sprout's motion with respect to USConnect's declaratory-judgment claim.

## 2. Misappropriation of Trade Secrets

29. An owner of a trade secret "shall have remedy by civil action for misappropriation" of the trade secret. N.C. Gen. Stat. § 66-153. The North Carolina Trade Secrets Protection Act defines a trade secret to include "business or technical information," including a "compilation of information," that satisfies certain conditions. N.C. Gen. Stat. § 66-152(3). The information must "[d]erive[] independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use." *Id.* In addition,

the information must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.*

30.     Sprout argues that USConnect's trade-secret claim fails for two reasons: (1) the claim is barred by the economic loss rule; and (2) the complaint fails to specify the alleged trade secrets with sufficient particularity. (Def.'s Mem. 15–16.) Sprout alternatively requests a more definite statement as to the alleged trade secrets.

31.     The economic loss rule "denote[s] limitations on the recovery in tort when a contract exists between the parties that defines the standard of conduct and which the courts believe should set the measure of recovery." *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *47–48 (N.C. Super. Ct. Nov. 3, 2011). This rule exists because "the open-ended nature of tort damages should not distort bargained-for contractual terms." *Artistic Southern Inc. v. Lund*, 2015 NCBC LEXIS 113, at *25 (N.C. Super. Ct. Dec. 9, 2015). The economic loss rule does not bar a claim when there is a dispute over the validity of the contract, the existence of a contractual duty, or the expiration of a contractual duty. *See, e.g., id.*; *RCJJ, LLC v. RCWIL Enters., LLC*, 2016 NCBC LEXIS 46, at *21 n.61 (N.C. Super. Ct. June 20, 2016).

32.     Although Sprout contends that the parties' "Agreement specified their duties," it has also raised factual disputes over the scope and validity of the Agreement. (Def.'s Mem. 15.) Sprout contends, for example, that the Agreement protects only *Sprout's* trade secrets and may not be enforced because it expired in 2015. (*See* Def.'s Mem. 11.) Given these disputes regarding the application of the contract to the alleged wrongdoing, the Court cannot conclude that the economic loss

rule applies to the claim for trade secret misappropriation. *See, e.g.*, *Artistic Southern*, 2015 NCBC LEXIS 113, at \*25, 33 (rejecting application of economic loss rule where contractual duties did not exist or expired); *RCJJ*, 2016 NCBC LEXIS 46, at \*21 n.61 (rejecting application of economic loss rule where disputes of fact existed over enforceability of contract).[1]

33.     Whether USConnect has identified its alleged trade secrets with sufficient particularity is a closer question. The North Carolina Court of Appeals has held that "a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 510–11, 606 S.E.2d 359, 364 (2004) (quoting *Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 468, 579 S.E.2d 449, 453 (2003)). A complaint fails to state a claim if it "makes general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly

---

[1] It is noteworthy that Sprout cites no case applying the economic loss rule to bar a claim for misappropriation of trade secrets. (*See* Def.'s Mem. 15–16.) The Court is not aware of any North Carolina precedent on point, but a number of courts in other jurisdictions have held that statutory claims for trade-secret misappropriation are not barred by the economic loss rule. *See Vizant Techs. LLC v. Whitchurch*, No. 16-1178, 2017 U.S. App. LEXIS 688, at \*13–14 & n.11 (3d Cir. Jan. 13, 2017) (non-precedential) (applying Delaware law); *Electrology Lab., Inc. v. Kunze*, 169 F. Supp. 3d 1119, 1155 (D. Colo. 2016) (applying Colorado law); *KDH Elec. Sys. v. Curtis Tech. Ltd.*, 826 F. Supp. 2d 782, 801–02 (E.D. Pa. 2011) (applying Pennsylvania law); *Veritas Operating Corp. v. Microsoft Corp.*, No. C06-0703-JCC, 2008 U.S. Dist. LEXIS 8166, at \*11–14 (W.D. Wa. Feb. 4, 2008) (applying Washington law); *Wolfe Tory Med., Inc. v. C.R. Bard, Inc.*, No. 2:07-CV-378 TS, 2008 U.S. Dist. LEXIS 13867, at \*9–10 (D. Utah Feb. 25, 2008) (applying Utah law); *New Lenox Indus. v. Fenton*, 510 F. Supp. 2d 893, 909 (M.D. Fla. 2007), *adopted by* 510 F. Supp, 2d 893 (M.D. Fla. 2007) (applying Florida law); *Bell Helicopter Textron, Inc. v. Tridair Helicopters, Inc.*, 982 F. Supp. 318, 321–23 (D. Del. 1997) (applying Delaware law).

misappropriated." *Washburn v. Yadkin Valley Bank & Trust Co.*, 190 N.C. App. 315, 327, 660 S.E.2d 577, 585–86 (2008).

34.     USConnect's complaint identifies the alleged trade secrets in two different ways.  In the section stating the claim for relief, USConnect alleges that its trade secrets include "sales, pricing and customer information, customer contacts and existing sales relationships," and "information regarding current and anticipated technology, pricing, sales and business strategy." (Compl. ¶ 51.)  In earlier sections reciting factual background, USConnect alleges that the trade secrets include "the underlying requirements of the full suite of technical services and other account service products provided by USConnect, as well as USConnect's service pricing information, customer proposals, historical costs, sales data, customer lists, key person relationships, and anticipated service upgrades and price increases." (Compl. ¶ 30.)  USConnect further alleges that this information satisfies the statutory requirements for trade-secret protection, including being subject to reasonable efforts to maintain the secrecy of the information.  (*See* Compl. ¶ 53.)

35.     Construing the complaint liberally, the Court concludes that these allegations, though meager, survive scrutiny under Rule 12(b)(6).  Most of the alleged trade secrets—for example, "pricing information, customer proposals, historical costs, sales data, customer lists, key person relationships, and anticipated service upgrades and price increases"—are indistinguishable from allegations this Court has found sufficient in prior cases.  *See, e.g.*, *Bldg. Ctr., Inc. v. Carter Lumber, Inc.*, 2016 NCBC LEXIS 79, at *11–13 (N.C. Super. Ct. Oct. 21, 2016) (collecting cases); *S. Fastening*

*Sys. v. Grabber Constr. Prods.*, 2015 NCBC LEXIS 42, at *11 (N.C. Super. Ct. Apr. 28, 2015) ("customer contact information and customer buying preferences and history"; "confidential freight information, sales reports, prices and terms books, sales memos, sales training manuals, commission reports, and information concerning SFS's relationship with its vendors"); *Le Bleu Corp. v. B. Kelley Enters.,* 2014 NCBC LEXIS 66, at *12–13 (N.C. Super. Ct. Dec. 9, 2014) ("customer lists, pricing information, transaction histories, key contacts, and customer leads"); *Koch Measurement Devices, Inc. v. Armke*, 2013 NCBC LEXIS 45, at *8 (N.C. Super. Ct. Oct. 14, 2013) ("customer lists including names, contact persons, addresses and phone number[s]"; "ordering habits, history and needs of . . . customers"; and "pricing and inventory management strategies"). These allegations are not so generalized as to fall below the standards for notice pleading.

36. Although USConnect's allegations meet the bare minimum required by Rule 12(b)(6), the Court holds, in its discretion, that a more definite statement is appropriate for three reasons.

37. First, although parties need not use identical phrasing to describe their trade secrets throughout the complaint, the differing recitations of the alleged trade secrets here do create some ambiguity. (*Compare* Compl. ¶ 30, *with* Compl. ¶ 51.) For example, in reciting background facts, paragraph 30 of the complaint discusses customer proposals and pricing data associated with anticipated service upgrades. It is unclear if these categories are included in the anticipated technology, business strategy, or customer information categories contained in paragraph 51, where

USConnect asserts its claim for relief. Clarification is appropriate to enable Sprout to frame its responsive pleading.

38. Second, although USConnect's allegations as to *business* information mirror allegations held to be sufficient in other cases, its allegations as to *technical* information are far more vague. USConnect seeks protection for "information regarding current and anticipated technology" and "the underlying requirements of the full suite of technical services and other account service products." (Compl. ¶¶ 30, 51.) Standing alone, these generalized allegations might not survive a motion to dismiss. In light of the fact that USConnect has sufficiently identified some alleged trade secrets, the Court exercises its discretion to permit USConnect to provide a more definite statement as to these additional, technical trade secrets.

39. Third, whether business information (including pricing and customer information) is subject to trade-secret protection depends on the content of the information. A price list, for example, "may constitute a trade secret where it contains pricing information, market forecasts, and feasibility studies, but may not if it consists of raw information without any methodology." *Le Bleu,* 2014 NCBC LEXIS 66, at *13. Similarly, customer lists and contact information may not constitute protectable trade secrets if the information is easily accessible through public information. These concerns are particularly relevant because the parties' Agreement appears to give Sprout the right to use and disclose at least some of USConnect's confidential information to third parties. (*See* Def.'s Mem. 13; Compl. Ex. A p.5.) In the circumstances of this case, a more definite statement is required,

and a determination about whether the content of USConnect's trade secrets is entitled to protection is "better made when the claim is more definitely pleaded." *Le Bleu,* 2014 NCBC LEXIS 66, at *13–14.

40. Accordingly, USConnect shall file a more definite statement of its trade secret claim. USConnect should clarify its allegations, describe the contents of the allegedly confidential information, and explain why the information is subject to trade-secret protection. To enable the parties to adhere to their agreed schedule for discovery and briefing of USConnect's pending motion for preliminary injunction, the Court directs USConnect to file its more definite statement within seven days of this Order.

3. Breach of Contract

41. A party states a breach-of-contract claim when (1) a valid contract exists, and (2) a term of the contract is breached. *See Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). USConnect alleges that the parties' Agreement remains valid and in force and that Sprout has breached its non-competition provision, its confidentiality provisions, and several other service and reporting provisions. (*See* Compl. ¶¶ 44–46.)

42. Sprout first asserts that there is no valid contract because the Agreement expired in 2015 or was otherwise terminated. (*See* Def.'s Mem. 6–8.) Sprout also raises scattered challenges to some, but not all, of USConnect's allegations that Sprout breached various terms of the Agreement. (*See, e.g.*, Def.'s Mem. 13–14.)

43.     The Court concludes that USConnect has adequately alleged the existence of a valid contract.  The Agreement states that it "may be extended for additional periods upon written consent by both parties under mutually agreeable terms" (Compl. Ex. A p.2), and USConnect has alleged that the parties extended the terms of the Agreement in a letter dated March 26, 2016. (Compl. ¶ 24, Ex. B.)  The letter's language is somewhat imprecise, but it is signed by both parties and states that "the parties will end the terms of service under the" Agreement only upon execution of a new agreement, which has not occurred.  (Compl. Ex. B.)  Furthermore, the complaint contains allegations that the parties continued to interact as if their relationship was controlled by the Agreement after April 2015.  (Compl. ¶ 21.)  USConnect contends that these allegations state alternative theories of express or implied contract.  (Pl.'s Opp'n. 6, 9.)

44.     Sprout's briefing does not address the existence of an implied contract, contending only that the March 26 letter is an unenforceable letter of intent.  The Court concludes that the determination of whether the parties reached a valid agreement, either expressly or by conduct, is a question of fact, not appropriate for resolution on Rule 12(b)(6).  *See Blythe v. Bell*, 2013 NCBC LEXIS 7, at *36 (N.C. Super. Ct. Feb. 4, 2013) ("As a general proposition, where a party presents adequate facts that an agreement was reached, whether an agreement was actually reached so as to form a binding contract is a question of fact for the jury.").

45.     The Court therefore denies Sprout's motion to dismiss the claim for breach of contract.  Sprout's arguments regarding the Agreement's confidentiality provisions

substantially concern the identification of USConnect's trade secrets, which the Court has addressed above. The Court has considered Sprout's remaining arguments and finds them unpersuasive.

## III.
## CONCLUSION

46. For all these reasons, the Court **DENIES** Sprout's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and its motion to dismiss for failure to state a claim under Rule 12(b)(6).

47. The Court **GRANTS** Sprout's alternative motion for a more definite statement. USConnect shall file its amended complaint within seven days of the entry of this order.

This the 21st day of April, 2017.


/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases